<div style="writing-mode: vertical">United States District Court
Northern District of California</div>

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIEL CHAVEZ, et al.,<br>　　　　　　Plaintiffs,<br>　　　v.<br>SAN FRANCISCO BAY AREA RAPID<br>TRANSIT DISTRICT,<br><br>　　　　　　Defendant. | **Consolidated Cases:**<br><br>No.  C 22-06119 WHA<br><br>No.  C 22-07720 WHA |
| BRADFORD MITCHELL,<br>　　　　　　Plaintiff,<br>　　　v.<br>SAN FRANCISCO BAY AREA RAPID<br>TRANSIT DISTRICT, et al.,<br><br>　　　　　　Defendants. | No.  C 22-09193 WHA |
| JERAMIAH COOPER, et al.,<br>　　　　　　Plaintiffs,<br>　　　v.<br>SAN FRANCISCO BAY AREA RAPID<br>TRANSIT DISTRICT,<br>　　　　　　Defendant. | **ORDER DENYING PLAINTIFFS'<br>SECOND OBJECTION TO<br>PLAINTIFFS' STIPULATED JURY<br>INSTRUCTION** |

In June, plaintiffs submitted jointly stipulated-to jury instructions (Dkt. No. 95).  Therein,

they stipulated to the following instructions regarding the undue hardship standard:

**Instruction No. 31**
An undue burden is shown when a burden is substantial in the
overall context of an employer's business.

**Instruction No. 32**
If a potential accommodation would threaten the health and safety
of co-workers or others, or increase a health and safety risk posed
to co-workers or others, then that potential accommodation
imposes an undue hardship.

(*id.* at 15).

The first trial began on July 8.  The Notice of Proposed Charge to the Jury, filed on the third day of trial, adopted the language stipulated to by plaintiffs:

> **19.**
> An undue hardship is shown when a burden is substantial in the overall context of an employer's business. If a potential accommodation would threaten the health and safety of co-workers or others, or increase a health and safety risk posed to co-workers or others, then that potential accommodation imposes an undue hardship.

(Dkt. No. 138 at 10).

At the July 12 charging conference (more than a month after the submission of plaintiffs' stipulated instructions), plaintiffs objected to plaintiffs' stipulated-to language:

> **The Court:**  You're objecting to your own stipulation?
>
> **Mr. Snider:**  Yes, Your Honor . . . . In common parlance, a hardship is, at minimum, something hard to bear . . . under any definition, a hardship is more severe than a mere burden . . . adding the modifier undue means that the requisite burden, privation, or adversity must rise to an excessive or unjustifiable level . . . . So that's directly from the Supreme Court, how they define undue hardship.

(Dkt. No. 156 at 14).  The Supreme Court decision cited, *Groff v. DeJoy*, came down well before the submission of plaintiffs' stipulated instructions.  600 U.S. 447 (2023).  Plaintiffs relied on *Groff* in their class certification and summary judgment briefing.

The Court ultimately adopted the language on which plaintiffs' objection to plaintiffs' own instruction relied.  The final charge delivered to the jury read as follows:

> **18.**
> A hardship is more severe than a mere burden, more than a *de minimis* burden, more than the imposition of some additional cost. Those costs have to rise to the level of a hardship. Undue means that the requisite burden, privation, or adversity is excessive or unjustifiable.
>
> **19.**
> An undue hardship is shown when a burden is substantial in the overall context of an employer's business. If a potential accommodation would threaten the health and safety of co-workers or others, or increase a health and safety risk posed to co-workers or others, then that potential accommodation imposes an undue hardship.

(Dkt. No. 144 at 8). Instruction 18 directly quoted the Supreme Court in *Groff*, as cited by plaintiffs, while Instruction 19 contained the language stipulated to by plaintiffs. In sum, plaintiffs received everything they asked for, twice over.

The first attempt to try this case resulted in a mistrial: the jury found for plaintiffs on their *prima facie* cases, but came to a 7-1 impasse, advantage BART, on the undue hardship affirmative defenses. Now, plaintiffs again object to the second sentence of Instruction 19, and in the alternative request the following changes (in bold) to that sentence:

> An undue hardship is shown when a burden is substantial in the overall context of an employer's business. If a potential accommodation would **[substantially]** threaten the health and safety of co-workers or others, or **[substantially]** increase a health and safety risk posed to co-workers or others, then that potential accommodation imposes an undue hardship.

(Dkt. No. 168 at 2).

This latest attempt to alter plaintiffs' stipulated-to undue hardship instruction is an exercise in gamesmanship. It is **DENIED**.

Plaintiffs' arguments to the contrary cut no figure.

*First*, plaintiffs assert that "the terms *threaten* and *increase*" in Instruction 19's second sentence "contain no limitations on the size of the threat or increase," and therefore "work to revert the standard set forth in *Groff* to the *de minimis* rule rejected by the U.S. Supreme Court" (Dkt. No. 168 at 2-3).

Plaintiffs' blinkered analysis divorces the second sentence of Instruction 19 from the undue hardship instruction as a whole, which spans the entirety of Instructions 18 and 19. Instruction 18 lays out the *Groff* standard at length:

> **18.**
> ***A hardship is more severe than a mere burden, more than a de minimis burden***, more than the imposition of some additional cost. Those costs have to rise to the level of a hardship. ***Undue means that the requisite burden, privation, or adversity is excessive or unjustifiable***.

(Dkt. No. 144 at 8) (emphasis added).

United States District Court
Northern District of California

3

1    The first sentence of Instruction 19, also omitted by plaintiffs, *again* quotes *Groff*: "[a]n

2    undue hardship is shown when a burden is ***substantial*** in the overall context of an employer's

3    business" (*ibid.*) (emphasis added).

4    It is implausible that the jury will presume the appropriate standard to be *de minimis*

5    despite *clear* and *repeated* admonitions that "a hardship is more severe than a mere burden,

6    ***more than a de minimis burden***" and must be "***substantial*** in the overall context of an

7    employer's business" (*ibid.*).  It is clear, when viewed in context, that Instruction 19 need not

8    repeat the word "substantial" *thrice* to get the point across.

9    Plaintiffs add that the second sentence of Instruction 19 is "absent from *Groff*" (Dkt. No.

10   168 at 3).  Correct.  The hardship at issue in *Groff* was the monetary cost and "disrupt[ion] [to]

11   the workplace and workflow, and diminished employee morale" caused by an employee's

12   refusal to work on the Sunday Sabbath.  *Groff*, 600 U.S. at 456.  *Groff* did not concern the

13   increased health and safety risk posed by an unvaccinated employee.  That is presumably why

14   plaintiffs, when they stipulated to that sentence, cited to seven *vaccine mandate* decisions and

15   not *Groff*.

16   *Second*, plaintiffs argue that "the *threaten* and *increase* risk to health and safety language

17   . . . comes from *Bordeaux*," which is distinguishable because the plaintiff-employee's work

18   duties there required "intimate physical touching," while those of plaintiffs here do not (Dkt.

19   No. 3).  In *Bordeaux*, an actress requested a religious exemption and accommodation from the

20   vaccine mandate then enforced on the defendant's movie set.  "The nature of Plaintiff's work

21   required close, unmasked contact with other performers," and "[a]ccommodating Plaintiff's

22   exemption request would have put the lives of her fellow cast and crew members in danger."

23   *Bordeaux v. Lions Gate Ent., Inc.*, 703 F. Supp. 3d 1117, 1135 (C.D. Cal. 2023).  The facts

24   here are not the same, plaintiffs argue, and the language should not be, either.

25   Plaintiffs' attempt to cabin the language at issue to the exact facts of *Bordeaux* is, as

26   stated during the charging conference, unconvincing.

27   Moreover, the attempt to distinguish *Bordeaux* ignores the six additional decisions that

28   *plaintiffs' own stipulation* cited in support of the language at issue (see Dkt. No. 95 at 13)

United States District Court
Northern District of California

4

1   (citing *Bordeaux v. Lions Gate Entertainment, Inc*., Case No. 2:22-cv-04244-SVV-PLA, 2023

2   WL 8108655, at * 13-* 14 (C.D. Cal. Nov. 21, 2023); *Kushner v. N. Y. C. Dep Y of Educ.*,

3   Case No. 22-cv-5265-DLI-VMS, 2023 WL 6214236, at *5 (E.D.N.Y. Sept. 25, 2023);

4   *Dennison v. Bon Secours Charity Health Sys. Med. Grp.*, PC, Case No. 22-CV-2929 (CS),

5   2023 WL 3467143, at *6 n.7 (S.D.N.Y. May 15, 2023); *Aukamp-Corcoran v. Lancaster Gen.*

6   *Hosp.*, Case No. 19-5734, 2022 WL 507479, at *6 (E.D. Pa. Feb. 18, 2022); *Robinson v.*

7   *Children's Hosp. Boston*, Case No. 14-10263, 2016 WL 1337255, at *9 (D. Mass. Apr. 5,

8   2016); *O'Hailpin v. Hawaiian Airlines, Inc*., 583 F. Supp. 3d 1294, 1309-10 (D. Haw. 2022);

9   *Barrington v. United Airlines*, *Inc*., 566 F. Supp. 3d 1102, 1109 (D. Colo. 2021)).

10       In *Kushner v. New York City Department of Education*, for example, a schoolteacher was

11   denied an exemption from the defendant's vaccine mandate and ultimately terminated.  No. 22-

12   CV-5265(DLI)(VMS), 2023 WL 6214236 (E.D.N.Y. Sept. 25, 2023).  *Kushner* held that the

13   defendant had established an undue hardship:  "It is beyond cavil that safety within any work

14   environment . . . is of absolute importance," and plaintiff's "unvaccinated presence would have

15   imposed substantial increased costs in relation to the conduct of [the defendant's] particular

16   business by creating a health and safety risk that would have prevented the DOE from fostering

17   a safe educational and work environment when COVID-19 vaccines had become available."

18   *Id*. at *5 (cleaned up).  There is no reason to think that the plaintiff in *Kushner*, a

19   schoolteacher, was involved in "intimate physical touching" of any kind.

20       At bottom, numerous decisions have considered the health and safety risks posed by

21   unvaccinated employees in a variety of contexts.  The undue hardship instruction accurately

22   captures the rule that emerges from an objective review of those decisions.  Plaintiffs so

23   stipulated in June.

24       *Third*, plaintiffs argue that "the *threat* and *increase* in risks to health and safety for undue

25   hardship language has never been used as a jury instruction" (Dkt. No. 168 at 5).  This

26   argument does not move the needle.  Plaintiffs fail to identify how many Title VII vaccine

27   mandate cases have otherwise gone to a jury.  To the Court's knowledge, the number is

28

United States District Court
Northern District of California

vanishingly small, if it has happened at all.  Nor do plaintiffs address whether those plaintiffs (if any) stipulated to that language.

Moreover, this argument is at war with the prior one.  In one breath, plaintiffs assert that the language used in prior decisions simply will not do – the facts in *this* action are unique, and the Court cannot look to prior vaccine mandate decisions, such as *Bordeaux* and *Kushner*.  In the next, plaintiffs complain that the exact language they stipulated to has not been previously adopted as some kind of wide-reaching standard.

*Fourth,* plaintiffs argue that "*Bordeaux* is on appeal and thus not authoritative" (*ibid*.). *Bordeaux* is a trial court decision from the Central District of California – it was never "authoritative."  The reasoning in *Bordeaux*, and the slew of similar decisions cited by plaintiffs' own stipulation to Instruction 19, constitute *persuasive* authority.  Plaintiffs' own stipulation and the final charge found that reasoning convincing.  This order does, too.

*Finally*, plaintiffs assert that their "concerns are not merely theoretical" because, during the first trial, Instruction 19 "proved to be confusing and problematic to the jury, *prompting jury notes* and *extended discussions*" (Dkt. No. 168 at 5) (emphasis added).  This mischaracterizes the nature of the jury's communications with the Court.  The concern underpinning plaintiffs' objection – purported ambiguity as to the minimum quantum of increased risk necessary to establish an undue hardship – did not preoccupy the jury's deliberations.

The jury *declined* to submit a note asking that very question.  On the third day of deliberation, the jury issued a note that read:  "We, the jury, are at an impasse on every plaintiff" (Dkt. No. 159 at 6).  Back in the courtroom and with counsel present, jurors asked several questions.  Juror 7 asked, in reference to Instruction 19, "does it matter how big the increase in risk is?" (*id*. at 8).  The Court re-read the relevant instruction, and invited the jury to "write out a question that the jury wants me to try to answer" if they require "further guidance on [ ] that point" (*id*. at 9).  The discussion then turned back to the issue of the deliberative process, and the possibility that one juror, swayed by sympathy, was refusing to engage in that process.  The latter problem continued to plague deliberations, as it had in days

6

1    prior.  As to Juror 7's question regarding risks, however, the jury did not make any further

2    request for clarification, despite the Court's invitation to do so.

3         During a separate discussion later in the day, Juror 8 stated that as to "Question Number

4    2 [BART's undue hardship defense] regarding 19 on the jurors' instructions, there is

5    agreement," and went on, again, to express concern that a juror was influenced by personal

6    sympathies (*id*. at 25).  Juror 7's question and the Court's re-reading of Instruction 19

7    constituted the entirety of the jury's inquiry regarding increased health and safety risks.

8         The only other exchange relevant to Instruction 19 concerned a question distinct from

9    that underlying plaintiffs' objection (a purported absence of "limitations on the size of the

10   threat or increase [in risk]" in the instruction) (Dkt. No. 168 at 5).  Near the end of

11   deliberations, Juror 2 asked, in sum:  when evaluating the increased health and safety risk, if

12   any, posed by an accommodation, what is the baseline against which those risks must be

13   compared (Dkt. No. 159 at 29-31)?  The Court clarified:  "you're comparing what the risk

14   would be of someone who is vaccinated versus someone who gets an accommodation but is

15   not vaccinated" (*id*. at 31).  Plaintiffs' counsel confirmed that the Court's clarification was

16   "essentially correct," and the juror confirmed that he understood (*ibid*.).  The juror's question

17   (what is the baseline against which an accommodation's risks are compared?) was separate and

18   distinct from the concern underlying plaintiffs' objection (what is the minimum quantum of

19   increased risk necessary to establish an undue hardship?).

20        In sum, the concern that a juror was refusing to deliberate "prompt[ed] jury notes and

21   extended discussions."  The issue raised in plaintiffs' objection did not.  The jury declined to

22   issue a note probing the quantum of risk necessary to find an undue hardship, despite the

23   Court's invitation to do so.  Discussion of the same was limited to a single question from Juror

24   7, followed by a re-reading of the instruction.  The record does not support plaintiffs'

25   contention that the issue was "confusing and problematic to the jury."

26

27                              *          *          *

28

United States District Court
Northern District of California

Plaintiffs' objection is also untimely.  Plaintiffs' counsel state that their six-page brief is intended to "supplement" the oral objection to the undue hardship instruction they made during the charging conference, and thus merely "provide[s] additional clarification of Plaintiffs' position" (Dkt. No. 168 at 2).  The specific additions and modifications now being sought were not raised during the charging conference.  Similarly, three of the four arguments now advanced in support of those modifications were not raised.

The Court's July 11 notice of the charging conference stated:

> [C]ounsel must, at the charging conference, bring to the judge's attention any addition, subtraction or modification or other objections or proposal for the jury instructions. *Otherwise, all such points shall be deemed waived* and it will not be sufficient merely to argue after the verdict that a proposed instruction (even if stipulated) filed earlier in the proceedings somehow was not adopted. Rather, any such proposal that counsel still cares about must be raised anew at the charging conference. The charging conference shall be conducted so as to give full and fair opportunity for counsel to raise any and all objections and proposals.

(Dkt. No. 138 at 1-2) (emphasis added).  Plaintiffs raised their objection to the undue hardship instruction at the charging conference and had ample opportunity to make every argument available to them.  This belated attempt at another bite, *seven weeks after the charging conference and the first trial*, comes too late.  To be clear:  the Court will not entertain any further objections to the final charge, novel, supplementary, or otherwise.  The final charge is just that – *final*.

**IT IS SO ORDERED.**

Dated:  August 31, 2024

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

United States District Court
Northern District of California