UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GABRIEL CHAVEZ, et al.,

    Plaintiffs,

  v.

SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT,

    Defendant.

No. C 22-06119 WHA

**ORDER DENYING RULE 59 MOTION FOR A NEW TRIAL**

## INTRODUCTION

In this Title VII religious accommodation action, defendant-employer seeks to set aside a partial verdict entered in favor of plaintiff-employees after a first jury trial, in advance of a retrial of those issues not reached by the first jury. The motion is **DENIED**.

## STATEMENT

These consolidated actions went to trial in July. Due to the large number of plaintiffs in the action, the trial was organized into phases. Seven plaintiffs selected by the parties constituted the first phase of trial, which began on July 8. The jury heard evidence until July 12, and began its phase one deliberations the following Monday.

The first attempt to try the case resulted in a mistrial: after nearly three days of deliberation during phase one, the jury found for all seven plaintiffs on their *prima facie cases*, but came to a 7-1 impasse, advantage BART, on the undue hardship affirmative defenses. The jury did not reach damages and did not advance to the subsequent phases of the trial.

The Court accepted a partial verdict for plaintiffs on their *prima facie* cases and otherwise declared a mistrial. A second trial was scheduled for October 15, 2024, during which the jury

will determine BART's affirmative defenses and damages, if necessary, as to the seven phase one plaintiffs, and then proceed to the subsequent phases. Defendant now moves for a new trial *in toto*, arguing that the Court abused its discretion in accepting a partial verdict, and should therefore set aside the first jury's verdict as to the phase one plaintiffs' *prima facie* cases.

**ANALYSIS**

The Federal Rules of Civil Procedure do not sanction the entry of partial verdicts in civil cases. Courts, however, have settled on a "general rule that a court may limit a new trial to specific issues." *Morrison Knudsen Corp. v. Fireman's Fund Ins. Co.*, 175 F.3d 1221, 1255 (10th Cir. 1999); *Gasoline Prod. Co. v. Champlin Ref. Co.*, 283 U.S. 494, 499 (1931) ("[W]here the requirement of a jury trial has been satisfied by a verdict according to law upon one issue of fact, [the Seventh Amendment] does not compel a new trial of that issue even though another and separable issue must be tried again.").

The trial court's discretion has its limits. In *Gasoline Products Co. v. Champlin Refining Co.*, the Supreme Court sanctioned partial retrials only where "it clearly appears that the issue to be retried is so distinct and separable from others that a trial of it alone may be had without injustice." 283 U.S. at 513. There, the jury "returned a verdict on petitioner's cause of action, and a verdict for respondent on the [breach-of-contract] counterclaim, leaving a balance in petitioner's favor for which the District Court gave judgment." *Id.* at 513-514. The court of appeals for the First Circuit found errors in the jury charge with respect to the measure of damages on the breach-of-contract counterclaim, and in directing a new trial, restricted the new jury's inquiry to the determination of damages. *Ibid*. *Gasoline Products* reversed, requiring a retrial of the counterclaim in full. The first jury's verdict did not include findings regarding the date of contract formation and breach, or the extent of the promised performance, all facts a second jury would need to determine anew to calculate damages. As a result, "the question of damages ... [was] so interwoven with that of liability that the former cannot be submitted to the jury independently of the latter without confusion and uncertainty, which would amount to a denial of a fair trial." *Id.* at 500. The analysis "looks forward to the new jury's inquiry . . .

2

[and] bars a limited retrial when two issues are inextricably intertwined. If a district court were to retry only one of two such intertwined issues to a second jury, while maintaining the vitality of the first jury's findings on the other issue, it would cause confusion and uncertainty and, thus, an unfair trial." *Fireman's Fund*, 175 F.3d at 1256.

Here, the issue decided (plaintiff's *prima facie* case) and the issues that remain (BART's affirmative defense and damages) are sufficiently distinct and separable to allow a partial retrial of the latter without confusion, uncertainty, or prejudice to BART.

A verdict for plaintiffs' *prima facie* case required the first jury to find that each plaintiff proved that:

> **1.** He or she had a bona fide religious belief, the practice of which conflicted with an employment requirement, in this case a vaccination requirement;
>
> **2.** He or she informed BART of that bona fide religious belief and conflict; and
>
> **3.** BART discharged, threatened, or otherwise subjected him or her to an adverse employment action because of his or her inability to fulfill the job requirement, in this case the vaccination requirement.

(Dkt. No. 144 at 7). This is distinct and separate from BART's undue hardship affirmative defense.

To prevail on undue hardship, BART must establish that it "initiated good faith efforts to accommodate reasonably the employee[s'] religious practices or that it could not reasonably accommodate the employee[s] without undue hardship." *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 606 (9th Cir. 2004). The undue hardship inquiry requires consideration of a plaintiff's prior employment, the availability of accommodations relative to that employment, impacts on other employees, and the overall consequences of each of these facts on the conduct of BART's business (Dkt. No. 72 at 16).

BART's position at trial is that "[p]laintiffs could not be accommodated to work while unvaccinated without imposing a substantial burden on BART's operations . . . due to the increased risk of unvaccinated employees becoming infected with COVID-19" (Dkt. No. 51 at

3

26). None of the affirmative-defense evidence presented by BART during the first trial, however, was intertwined with the facts and evidence at issue in plaintiffs' *prima facie* case. Whereas the first issue concerns the substance and sincerity of plaintiffs' personal faiths, the second concerns plaintiffs' job duties, collective bargaining agreements, BART's facilities, the relative efficacy of the COVID-19 vaccines and alternative safety protocols, the relative communicability of COVID-19 between vaccinated and unvaccinated employees, and so on.

BART's own exemption and accommodation procedure recognized the distinct nature of the bona fide religious belief and undue hardship inquiries. *First*, BART determined whether an individual applicant had a bona fide religious belief that conflicted with the vaccine requirement. If so, that applicant was granted an exemption. *Second*, those granted exemptions were separately considered for accommodations. BART ultimately determined that no individual granted an exemption could be accommodated absent undue hardship. The documentation relaying that decision discussed the applicant's position, the risks posed by COVID-19, and the relative efficacy of the vaccine as compared to other safety measures. Bona fide religious belief did not factor in BART's own undue hardship analysis. It will not factor in the second jury's determination of undue hardship, either.

Nor is the final step of the jury analysis, damages, "inextricably intertwined" with plaintiff's *prima facie* case. While a finding for plaintiffs on the *prima facie* case is a prerequisite to damages, the two inquiries are otherwise unrelated. Unlike *Gasoline Products*, the unstated factual minutiae underpinning the first jury's partial verdict for plaintiffs' *prima facie* case, which concern the tenets and sincerity of each plaintiffs' faith, are separate and distinct from those facts that the second jury must rely upon to determine damages, should they reach the issue. There is no risk of confusion, uncertainty, or unfairness.

During the first trial's charging conference, BART stipulated that three of the seven phase one plaintiffs had met their *prima facie* burden, and **BART's counsel** requested that the Court include affirmative answers as to those three plaintiffs' *prima facie* cases on the special verdict form (reproduced below) prior to its submission to the jury (Dkt. No. 156 at 146). The

4

first jury was left to decide only the affirmative defense and damages as to those three plaintiffs.

| Plaintiff | QUESTION 1<br>Has plaintiff proven a *prima facie* case? YES or NO. | QUESTION 2<br>Has BART proven undue hardship? YES or NO. | QUESTION 3<br>If you answered "YES" to Question 1 and "NO" to Question 2, state the damages proven by plaintiff, if any. |
|---|---|---|---|
| Darolyn Turner | YES | _____ | $ _____ |
| Phi Le | YES | _____ | $ _____ |
| Adrian Gilbert | YES | _____ | $ _____ |
| Clifton Harrison | _____ | _____ | $ _____ |
| Susan Richardson | _____ | _____ | $ _____ |
| Albert Roth | _____ | _____ | $ _____ |
| Rhiannon Doyle | _____ | _____ | $ _____ |

The first jury's partial verdict has the same effect as BART's own stipulation and requested special verdict form. A certain number of plaintiffs in the second trial will have "YES" entered in the verdict form for the *prima facie* case. The jury will be left to decide the affirmative defense and damages, if necessary, as to those plaintiffs. BART has not explained why removing the *prima facie* case from the purview of the second jury would be confusing, prejudicial, or unfair in the second trial, given that BART stipulated to this course of action in the first trial.

BART does not engage with any of the above, and instead advances a bright-line rule: a district court cannot accept a partial verdict as to a *prima facie* case where the jury did not reach a verdict on all available affirmative defenses. Put differently, the trial court can only enter a partial verdict if the unanimous portion of the jury's verdict is dispositive of an entire claim.

BART points to Federal Rule of Criminal Procedure 31, which limits partial verdicts to unanimous decisions that dispose entirely of a defendant, or an entire count against a particular defendant. BART argues that courts have likewise entered partial *civil* verdicts *only* where

5

they dispose of an entire claim or defendant, "consistent with the criminal rule" (Dkt. No. 165-1 at 3). The decisions cited, all civil, do not rely on Rule 31 or its limitation. The only discussion of Rule 31 in the cited decisions concerns a *rejection* of the appellant's attempt to use the criminal rule's language to infer limitations on a trial court's discretion to enter a partial *civil* verdict. *Sanchez v. City of Chicago*, 880 F.3d 349, 360 (7th Cir. 2018).

BART does not cite, and the Court has not found, any decision applying Rule 31's bright line to a civil trial. Nor has BART cited any case barring the entry of a partial verdict in this matter on any other ground. BART asserts instead that the dearth of "precedent *permitting* entry of a partial verdict with respect to just part of a claim" places such verdicts outside the discretion of the trial court (Dkt. No. 165-1 at 4). The decisions cited by BART disagree with that line of reasoning: "*In the absence of authority directly proscribing partial verdicts in civil cases, we believe that at the very least a trial judge, in the exercise of sound discretion, may follow such a course.*" *Sanchez*, 880 F.3d at 361 (internal quotation marks omitted, emphasis added).

Finally, BART takes issue with the fact that Supreme Court's decision in *Gasoline Products* was "close to a hundred years ago" law (Dkt. No. 171 at 2). Age alone does not diminish the Supreme Court's guidance. All those years have passed, true. Yet BART cites no intervening authority holding otherwise. *Gasoline Products* has stood the test of time.

## CONCLUSION

For the aforementioned reasons, BART's motion for a new trial is **DENIED**.

**IT IS SO ORDERED.**

Dated: October 1, 2024.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE