UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GABRIEL CHAVEZ, et al.,

    Plaintiffs,

    v.

SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT,

    Defendant.

No. C 22-06119 WHA

**ORDER GRANTING DEFENDANT'S MOTION IN LIMINE NO. 3**

## INTRODUCTION

In this Title VII religious accommodation action, defendant-employer seeks to exclude evidence of requests for religious exemptions from employees who are not plaintiffs in this action. This motion *in limine* is **GRANTED**, unless defendant opens the door.

## STATEMENT

During the pandemic, BART's Board of Directors approved a mandate requiring all employees and board members to be vaccinated against COVID-19. The mandate created an exemption and accommodation procedure for those who qualified for either medical or religious accommodations. A total of 205 employees submitted requests for exemptions and accommodations: 181 sought religious exemptions, 17 sought medical exemptions, and 7

requested both.* Of the 188 requests for religious exemption and accommodation, 40 applicants did not complete the application process. Of the 148 that did, 70 were granted religious exemptions, the remainder denied. Of the 70 who were granted exemptions, none were granted an accommodation.

Of the 24 medical exemption and accommodation requests, 10 completed the process, and eight were granted an accommodation, namely, an unpaid leave of absence until such time as the employee could be vaccinated. No employee was permitted to work while unvaccinated.

Plaintiffs' Title VII and FEHA claims went to trial on July 8, 2024. At the time of the pretrial conference, there were 20 plaintiffs remaining in the three consolidated actions (Dkt. No. 115 at 3). After a week of evidence and roughly three days of deliberation, the jury came to an impasse, and ultimately stalled. The Court accepted a partial verdict for each plaintiff on their *prima facie* case, the jury was discharged, and a retrial on the remainder of the issues was set for October 15 (Dkt. No. 151). At the time of this order's filing, 8 plaintiffs are set to retry their claims, the remainder having settled.

**PROCEDURAL HISTORY**

Prior to the first trial, BART brought a motion *in limine* to exclude evidence or argument concerning the denial of requests for religious exemption or accommodation not in suit under Federal Rules of Evidence 403. That motion was granted in part and denied in part. The final pretrial order held:

> The fact that BART was unable to accommodate any individual with a religious exemption may be relevant. However, there is a risk that valuable trial time will be wasted litigating the propriety of individual accommodation decisions not in suit. To minimize that risk, plaintiffs will be allowed to elicit evidence regarding the total number of exemptions and accommodations requested and granted from only one witness. Plaintiffs agreed that that will be BART director of leave management Rodney Maplestone, who was involved in the consideration of every accommodation request. A limiting instruction will be given if necessary. Plaintiffs

---

* The numbers relied upon are taken from the declaration of Rodney Maplestone in support of BART's opposition to plaintiffs' motion for class certification (Dkt. No. 42-1). There has been slight variance in the number of total exemption requests cited (both across parties and across time) but those differences are immaterial to the present analysis.

2

may not otherwise elicit such testimony.

(Dkt. No. 115 at 5).

At trial, plaintiffs did not introduce any such evidence, despite ample opportunity to do so. On August 28, after the conclusion of the first trial, the Court issued an order to show cause stating that "[o]n further reflection, the Court is inclined to reverse itself and hold that any evidence pertaining to exemption and accommodation requests and determinations not in suit should be excluded" (Dkt. No. 170). That order invited, and the Court received, further briefing on the issue. This order follows.

**ANALYSIS**

Rule 403 provides that:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

FRE 403.

Having received the benefit of hearing all the evidence at trial, this order reverses the final pretrial order's holding as to defendant's third motion in limine. Introduction of evidence or argument pertaining to exemption and accommodation requests and determinations not in suit are excluded. That evidence, even if introduced in the limited manner set out in the final pretrial order, presents a danger of unfair prejudice and undue delay that substantially outweighs its probative value.

1. **THE PROBATIVE VALUE OF THE EVIDENCE IS MINIMAL.**

BART's exemption and accommodation decisions (and plaintiffs' *prima facie* case and defendant's affirmative defense at trial) rest on highly individualized inquiries. An exemption, for example, required a bona fide religious belief that conflicted with the vaccine requirement. Applicants for the religious exemption presented a broad swathe of religious beliefs: "Christianity," "the teachings of the bible," "Catholic," "Islamism," "non-denominational Christianity," and "born again Christian" are just a few. Even within a single faith, the specific

3

tenet necessitating abstention varied. Those who professed some form of Christian belief, for example, cited qualms with the research and development process of the vaccines, the alteration of a divinely created immune system, and the injection of "foreign biological substances." Some provided letters from various pastors and churches, or certificates of baptism. Others appended United Nations declarations and California Assembly bills to their exemption requests. Others still expressed concerns about the medical consequences of vaccination and cited to public resources such as the CDC's Vaccine Adverse Event Reporting System. Some provided supplemental documentation upon BART's invitation, others were interviewed by a panel of BART employees. Whether or not any one request did in fact rest on a bona fide religious belief presents an individual inquiry that requires the consideration of evidence pertaining to the applicant, and only the applicant. It is unlikely that the testimony of any one plaintiff in this suit, for example, will shed any light on the propriety of BART's exemption decisions not in suit.

BART's accommodation decisions (and affirmative defense at trial) are likewise individualized inquiries. True, BART's position – that the health and safety risk posed by unvaccinated employees constituted an undue hardship – is, to some degree, susceptible to common proof. The testimony of BART's expert epidemiologist and expert industrial hygienist, for example, go to the relative efficacy of the COVID-19 vaccine and other potential accommodations, and illuminate BART's decision-making as a general matter. Determining the propriety of any one accommodation decision nevertheless requires a return to individual facts. It is not enough that the vaccine was the most effective means of protecting employees and patrons: BART must ultimately establish that the particulars of each plaintiff's essential job duties did not allow for an accommodation absent undue hardship.

The latter issue proved crucial to the first jury's analysis of BART's affirmative defense. Plaintiff Phi Le is illustrative. Plaintiff Le was employed as a community service officer in the special parking enforcement team. He testified that he "was responsible for going to a certain station [each] day and just patrolling the parking lots and writing citations if I needed to" (Dkt. No. 153 at 70). He testified that he traveled alone in his assigned vehicle, that no other

4

employees used his car when he clocked out, and that the low ridership during the pandemic meant that he spent his day "patrolling . . . empty lots" (Dkt. No. 153 at 82). The rare patron interaction took place outdoors, from a significant distance. Plaintiff Le further attested to various specific accommodations that would all but eliminate the time he spent in BART locker rooms, bathrooms, and other indoor facilities.

BART, meanwhile, argued that Plaintiff Le's work "had to be done in person and could not be isolated from other people, not from other employees and not from patrons. They worked face-to-face with the public and other employees" (Dkt. No. 153 at 32). BART's chief of police, Kevin Franklin, testified that *because* the pandemic largely eliminated the need for parking enforcement, Plaintiff Le was re-assigned to "station duty" (Dkt. No. 155 at 160). Per Chief Franklin, Plaintiff Le's duties included "being visible around fare gates and public areas of the station, riding trains, and providing a uniform presence to reassure the public," all of which increased his public exposure "from normal parking duties" (*ibid.*). In sum, while Plaintiff Le testified that the pandemic had resulted in a daily routine void of interpersonal interactions, BART asserted its response to the pandemic *increased* Plaintiff Le's public exposure from normal parking duties.

These details proved crucial to the first jury's evaluation of BART's accommodation decision as to Plaintiff Le. The jury issued a note requesting a timeline of Plaintiff Le's parking duties (to which he testified) as opposed to his station duties (to which Chief Franklin testified), and a significant portion of the two witnesses' testimony was re-read to the jury (Dkt. No. 147 at 2).

The same is true for those who worked as station agents (such as Plaintiffs Harrison and Richardson). BART labored during the first trial to establish that "station agent work has to be done in person, cannot all be behind the glass in the booth, and important parts of it involve being face-to-face with patrons and other employees," while plaintiffs testified that, in their day-to-day practice, they managed to perform the duties asked of them with little to no contact with others (Dkt. No. 153 at 32). Plaintiffs who worked as train conductors likewise testified to their individual practices when "sweeping" trains and performing other job tasks, while

5

BART introduced evidence suggesting that those same job duties required close contact with patrons.

Given the individualized nature of those inquiries, the probative value, if any, of outcomes not in suit is minimal.

2. **THE EVIDENCE'S MINIMAL PROBATIVE VALUE IS SUBSTANTIALLY OUTWEIGHED BY THE DANGER THAT IT WILL CONFUSE THE ISSUES, UNFAIRLY PREJUDICE BART, CAUSE DELAY AND WASTE TIME.**

Plaintiffs argue that accommodation requests not in suit are "highly relevant" to the extent that they reflect "[t]he extent to which an employer has engaged in the interactive process and presented potential accommodations" (Dkt. No. 77 at 7).

*First*, introduction of the evidence for that purpose is likely to confuse the issues. Plaintiffs' argument regarding BART's engagement with the "back-and-forth" of the accommodation process was addressed on summary judgment. A March 2024 order explained:

> [P]laintiffs argue that BART's burden must be taken up in two consecutive steps: "the employer must start by demonstrating that it made a good faith effort to accommodate the religious beliefs of the employee. *After* proving that it made those good faith efforts and that the attempts were unsuccessful, the employer must show an undue hardship" (Reply 11). Plaintiffs quote *Heller v. EBB Auto Co.*'s directive that "at a minimum, the employer [is] required to negotiate with the employee in an effort reasonably to accommodate the employee's religious beliefs" (Reply 12). 8 F.3d 1433, 1438 (9th Cir. 1993). The argument goes: no plaintiffs were offered accommodation, therefore no reasonable effort was made, therefore BART fails before ever reaching undue hardship (Reply 12). However, the sentence immediately after the *Heller* passage quoted by plaintiffs reads***: "[t]he employer need not make such an effort if it can show that any accommodation would impose undue hardship."*** 8 F.3d at 14[40].

(Dkt. No. 72 at 15) (emphasis added). The issue of an employer's engagement with the interactive process and presentation of potential accommodations is tangential. Moreover, each plaintiff testified extensively as to their impressions of BART's engagement in exactly that process during the first trial. They will no doubt do the same during the second. To allow

plaintiffs to introduce cumulative evidence on this point would only lead the jury further astray from the issues to be decided.

*Second*, introduction of this evidence will either unfairly prejudice BART or waste time and cause delay. Plaintiffs have made clear that they expect this evidence to support the inference that BART did not give genuine consideration to any of the exemption or accommodation decisions at issue. BART cannot combat that inference absent significant delay and waste of trial time.

There are now only eight plaintiffs remaining in suit. About 138 completed exemption and accommodation requests are therefore out of suit. BART's rebuttal of the inference plaintiffs wish to levy against them will require a march through each of those decision, first to address the degree to which BART did or did not engage in a good faith back-and-forth with the individual applicant, and second to lay out the grounds for BART's rejection of the individual applicant's exemption or accommodation. Plaintiff Le's example above is illustrative of the factual nuances that need be addressed in any such effort. The jury and the Court do not have the time and resources necessary to endure that march, in light of the minimal relevance and probative value of the evidence. Nor can BART be asked to simply live with the inference that they rejected every applicant out of hand, absent an opportunity to present that countervailing evidence.

Plaintiffs' contrary arguments do not move the needle.

*First*, plaintiffs argue that *Groff v. DeJoy* requires consideration of the decisions not in suit, quoting the Supreme Court's instruction that the test be applied "in a manner that takes into account all relevant factors *in the case at hand*, including *the particular accommodations at issue* and their practical impact in light of the nature, size, and operating cost of an employer." 600 U.S. 4447, 470-71 (2023) (emphasis added). The "particular accommodations at issue" "in the case at hand" are those that are in suit. As detailed above, the out-of-suit exemption and accommodation decisions have little bearing on "the particular accommodations at issue" here. The inquiry is an individualized one, and the fact that some

7

number of individuals had their requests denied has little bearing on whether Plaintiff Le, for example, could be reasonably accommodated without undue hardship to BART.

*Second*, plaintiffs cite to appellate decisions in "corollary Title VII contexts" that have admitted evidence regarding accommodations not in suit and suggest that not doing so here "would appear to constitute reversible error" (Dkt. No. 178 at 4-6).

The decisions cited each considered claims of *disparate treatment* and are therefore inapposite. *Legg v. Ulster County* is illustrative. 820 F.3d 67 (2d Cir. 2016). The appellant, a corrections officer employed in defendant county's jail, claimed that the county "unlawfully discriminated against her on the basis of her pregnancy when it denied her request for an accommodation under its light duty policy, pursuant to which only employees injured on the job were eligible for light duty assignments." *Id*. at 69. *Leggs* explained that a pregnancy discrimination claim founded on a disparate treatment theory requires a plaintiff to show that:

> (i) "that she belongs to the protected class," (ii) "that she sought accommodation," (iii) "that the employer did not accommodate her," and (iv) *"that the employer did accommodate others "similar in their ability or inability to work."*

*Id*. at 73 (quoting *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 208 (2015)) (emphasis added). The burden then shifts to the defendant-employer, and assuming the employer successfully rebuts the above, the burden returns to the plaintiff, who must show that the employer imposed a "significant burden on pregnant workers," such as "*by showing 'that the employer accommodates a large percentage of nonpregnant workers while failing to accommodate a large percentage of pregnant workers*.'" *Id*. at 74 (quoting *Young*, 575 U.S. at 209). That plaintiffs asserting a disparate treatment theory ought to be able to admit evidence of employer actions not in suit is a matter of common sense: how else is a plaintiff to prove that they were treated differently from others?

Plaintiffs' case does not rest on a disparate treatment theory. Indeed, BART did not allow *any* workers to work unvaccinated while the mandate was in place. Evidence of exemption and accommodation decisions not in suit have minimal probative value to the

theories that *are* at issue here. That value is substantially outweighed by the danger of confusing the issues, prejudicing BART, and causing delay and waste of time.

## CONCLUSION

For the aforementioned reasons, defendant's third motion *in limine* is **GRANTED**, unless defendant opens the door.

**IT IS SO ORDERED.**

Dated: October 1, 2024.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE