1  Kevin T. Snider, CA State Bar No. 170988
    *Counsel of Record*
2  Matthew B. McReynolds, CA State Bar No. 234797
   Milton E. Matchak, CA State Bar No. 215739
3  PACIFIC JUSTICE INSTITUTE
   P.O. Box 276600
4  Sacramento, CA 95827
   Tel. (916) 857-6900
5  Email: ksnider@pji.org;
           mmcreynolds@pji.org;
6           mmatchak@pji.org

7  *Attorneys for Plaintiffs*

8
                **IN THE UNITED STATES DISTRICT COURT**
9              **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10  TONYA LEWIS-WILLIAMS, et al.,          ) Case No.: 3:22-cv-06119-WHA
                                           )
11                                         )
              Plaintiffs,                  )
12  v.                                     ) **PLAINTIFFS' OPPOSITION TO BART'S**
                                           ) **MOTION FOR JUDGMENT AS A**
13  SAN FRANCISCO BAY AREA RAPID           ) **MATTER OF LAW (FRCP 50) OR FOR A**
    TRANSIT DISTRICT,                      ) **NEW TRIAL (FRCP 59)**
14                                         )
                                           )
15            Defendant.                   )
    _____        )
16  BRADFORD MITCHELL,                     ) **RELATED CASES**
                                           )
17            Plaintiff,                   )
                                           ) Case No.: 3:22-cv-07720-WHA
18  v.                                     )
                                           )
19  SAN FRANCISCO BAY AREA RAPID           )
    TRANSIT DISTRICT.                      )
20  _____        )
                                           )
21  JERAMIAH COOPER, et al.,               ) Case No.: 3:22-cv-09193-WHA
                                           )
22            Plaintiffs,                  )
                                           )
23  v.                                     ) DATE:   December 11, 2024
                                           ) TIME:   8:00 a.m.
24  SAN FRANCISCO BAY AREA RAPID           ) JUDGE: Hon. William H. Alsup
    TRANSIT DISTRICT.                      )
25  _____        )

26

27

28
_____

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ............................................................................................................1

ARGUMENT ....................................................................................................................1

I.    BART fails to explain how its motion satisfies either the spirit or letter of
      FRCP 50 or 59 ....................................................................................................1

II.   Substantial evidence supports the jury's conclusion that BART did not meet
      its burden as to its affirmative defense, while the Plaintiffs met their burdens
      as to their prima facie case and damages ...........................................................2

      A.  Inconsistencies from BART's management witnesses undermined its
          case and led to the jury's first verdict that BART did not prove an
          undue hardship ............................................................................................3

      B.  BART's after-the-fact expert witnesses could not salvage the damage
          done by its decision-makers to its case ......................................................8

III.  BART's proffered authorities do not support, and in many ways contradict,
      its position ........................................................................................................10

      A.  The Ninth Circuit has been especially clear that employment
          discrimination suits should typically go to a jury ....................................10

      B.  BART's non-employment and out-of-jurisdiction cases do not help its
          argument ....................................................................................................10

      C.  The overwhelming weight of authority in this Circuit and from the
          Supreme Court upholds jury verdicts in employment discrimination
          cases ..........................................................................................................12

      D.  Other non-binding decisions do not counsel a different result ................13

IV.   BART overstates the significance of closing arguments and their effect
      even on the jury's prior deliberations and verdict ...........................................15

CONCLUSION................................................................................................................18

PLAINTIFFS' OPPOSITION TO BART'S MOTION FOR NEW TRIAL

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1968)....................................................................................2

*Anheuser-Busch, Inc. v. Natural Beverage Distributors*,
  69 F.3d 337 (9th Cir. 1995) .......................................................................18

*Barnard v. Theobald*,
  721 F.3d 1069 (9th Cir. 2013) .....................................................................2

*Bird v. Glacier Electrical Cooperative, Inc*.,
  255 F.3d 1136 fn.16 (9th Cir. 2001) ..........................................................16

*Celotex v. Catrett*,
  477 U.S. 317 (1986)....................................................................................2

*Chesapeake & Ohio Railway Co. v. Martin*,
  283 U.S. 209 (1931)...................................................................................11

*Chicago, Rock Island & Pacific Railway Co. v. Howell*,
  401 F.2d 752 (10th Cir. 1968) .................................................................6, 10

*City of Pomona v. SQM North America Corp*.,
  750 F.3d 1036 (9th Cir. 2014) ...................................................................11

*Cooper v. Firestone Tire & Rubber Co*.,
  945 F.2d 1103 (9th Cir. 1991) ...................................................................18

*Cunningham v. Wong*,
  704 F.3d 1143 (9th Cir. 2013) ...................................................................11

*Dark v. Curry County*,
  451 F.3d 1078 (9th Cir. 2006) ...................................................................12

*Davis v. Team Elec. Co*.,
  520 F.3d 1080 (9th Cir. 2008) ...................................................................10

*EEOC v. GoDaddy Software, Inc*.,
  581 F.3d 951 (9th Cir. 2009) .......................................................................2

*EEOC v. Pape Lift, Inc*.,
  115 F.3d 676 (9th Cir. 1997) .................................................................2, 13

*Escriba v. Foster Poultry Farms, Inc.*,
    743 F.3d 1236 (9th Cir. 2014) ...................................................................13

*Estate of Diaz v. City of Anaheim*,
    840 F.3d 592 (9th Cir. 2016) .....................................................................2

*Fisher v. City of San Jose*,
    558 F.3d 1069 (9th Cir. 2009) ..................................................................11

*Garcia-Ayala v. Lederle Parenterals, Inc.*,
    212 F.3d 638 (1st Cir. 2000) ....................................................................14

*Hangarter v. Provident Life & Accident Ins. Co.*,
    373 F.3d 998 (9th Cir. 2004) ..................................................................... 2

*Hemmings v. Tidyman's Inc.*,
    285 F.3d 1174 (9th Cir. 2002) .................................................12, 15, 16

*Herrmann v. Salt Lake City Corp.*,
    21 F.4th 666 (10th Cir. 2021) ..................................................................13

*Imperium IP Holdings (Cayman) Ltd. v. Samsung Electrical Co., Ltd.*,
    757 Fed. Appx. 974 (Fed. Cir. 2019) .......................................................11

*In re RFC and ResCap Liquidating Trust Action*,
    399 F. Supp. 3d 804 (D. Minn. 2019) .......................................................11

*Kaiser Steel Corp. v. Frank Coluccio Constr. Co.*,
    785 F.2d 656 (9th Cir. 1986) ....................................................................18

*Landes Construction Co., Inc. v. Royal Bank of Canada*,
    833 F.2d 1365 (9th Cir. 1987) ..................................................................10

*LeBarron v. Interstate Group, LLC*,
    529 F. Supp. 3d 1163 (D. Nev. 2021) .......................................................13

*Makor v. Burlington Northern Santa Fe Railway Co.*,
    680 Fed. Appx. 542 (9th Cir. 2017) ..........................................................13

*McLean v. Runyon*,
    222 F.3d 1150 (9th Cir. 2000) ...................................................................2

*NewSCI, Inc. v. Staffing 360 Solutions, Inc.*,
    865 F.3d 251 (5th Cir. 2017) ....................................................................11

PLAINTIFFS' OPPOSITION TO BART'S MOTION FOR NEW TRIAL

*O'Neal v. Ferguson Constru. Co.*,
   237 F.3d 1248 (10th Cir. 2001) ............................................................4

*Pease v. Production Workers Union of Chicago & Vicinity Local 707*,
   Case No. 02 C 6756, 2004 WL 526369 (N.D. Ill. March 15, 2004)...........................14

*Quinn v. Southwest Wood Products, Inc.*,
   597 F.2d 1018 (5th Cir. 1979) ...................................................11

*Quintana-Ruiz v. Hyundai Motor Corp.*,
   303 F.3d 62 (1st Cir. 2002) ........................................................11

*Reeves v. Sanderson Plumbing Products, Inc.*,
   530 U.S. 133 (2000)........................................................... 2, 12

*Security-First National Bank of Los Angeles v. Lutz*,
   322 F.2d 348 (9th Cir. 1963) ......................................................11

*Selle v. Gibb*,
   741 F.2d 896 (7th Cir. 1984) ......................................................11

*Silver Sage Partners, Ltd. v. City of Desert Hot Springs*,
   251 F.3d 814 (9th Cir. 2001) ......................................................11

*Sip-Top, Inc. v. Ekco Group, Inc.*,
   86 F.3d 827 (8th Cir. 1996) .......................................................11

*United States v. Diaz*,
   876 F.3d 1194 (9th Cir. 2017) .....................................................9

*Winarto v. Toshiba America Electronics Components, Inc.*,
   274 F.3d 1276 (9th Cir. 2001) ....................................................12

*Wood v. Green*,
   323 F.3d 1309 (11th Cir. 2003) ...................................................14

**STATUTES AND RULES**

42 U.S.C. § 2000e et seq. (Title VII) ..................................................12

Federal Rule of Civil Procedure, Rule 50 ..........................................*passim*

Federal Rules of Civil Procedure, Rule 56 .........................................1, 10

Federal Rule of Civil Procedure, Rule 59 ..........................................*passim*

PLAINTIFFS' OPPOSITION TO BART'S MOTION FOR NEW TRIAL

**INTRODUCTION**

Following the October jury trial in this case which reached favorable verdicts for the Plaintiffs, BART has now moved under FRCP 50 and 59 to set aside the verdicts.

While BART's motion is unsurprising from a procedural standpoint, its arguments seek to re-imagine the evidence and override the jury's crucial role. Contrary to the motion's retelling, the jury weighed considerable testimonial and documentary evidence casting doubt on BART's assertions and supporting the Plaintiffs. Accordingly, the jury first justifiably concluded that BART had not met its burden of proving its affirmative defense of undue hardship. In its motion, BART spills most of its ink on the first phase of the trial and does not meaningfully contest the jury's subsequent findings in favor of the Plaintiffs as to their prima facie case. Instead, BART imagines that closing arguments unduly influenced the jury, even though the verdicts did not reflect any hint of passion or prejudice.

The verdicts in these cases were supported by substantial evidence. BART's inability to understand how it could have failed to persuade the jury does not entitle it to a third trial.

**ARGUMENT**

**I.    BART fails to explain how its motion satisfies either the spirit or letter of FRCP 50 or 59**.

BART proceeds first under FRCP 50 and alternatively under FRCP 59. BART spends approximately the first half of its motion simply re-arguing its theory of the case which did not persuade the jury.

When it finally turns its attention to the law, BART's motion is remarkably weak as to controlling, on-point authority in its favor. It opts instead for numerous authorities that are far removed from this employment discrimination context, are not binding precedent, or actually hold the opposite of what BART seeks here.

The U.S. Supreme Court has observed that the standards governing judgment as a matter of law under FRCP 50 and summary judgment under FRCP 56 mirror each other,

such that the inquiry is the same. *Reeves v. Sanderson Plumbing Prods.,* 530 U.S. 133, 150 (2000) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-251 (1986), and *Celotex v. Catrett*, 477 U.S. 317, 323 (1986)).

When considering an FRCP 50 motion, the court looks to whether the evidence, construed in the light most favorable to the non-moving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict. *Estate of Diaz v. City of Anaheim*, 840 F.3d 592, 604 (9th Cir. 2016). The court must also draw all reasonable inferences in favor of the non-moving party. *EEOC v. GoDaddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009). The court is not to make credibility determinations or weight the evidence. *Id.; see also, Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1005 (9th Cir. 2004) (citing *Reeves,* 530 U.S. at 150).

Thus, it will be "rare cases" where the Court should overturn a jury verdict. *Barnard v. Theobald*, 721 F.3d 1069, 1076 (9th Cir. 2013) (citing *McLean v. Runyon*, 222 F.3d 1150, 1153 (9th Cir. 2000)). The standard for Rule 59 overlaps with Rule 50; a "stringent standard" applies when the motion is based on insufficiency of the evidence. *EEOC v. Pape Lift, Inc.*, 115 F.3d 676, 680 (9th Cir. 1997) (affirming denial of JMOL, and reversing to the extent retrial had been granted in age discrimination case).

## II.    Substantial evidence supports the jury's conclusion that BART did not meet its burden as to its affirmative defense, while the Plaintiffs met their burdens as to their prima facie case and damages.

BART's motion repeats its now-familiar themes of the case, with hardly a mention of the countervailing testimony, evidence, and cross-examinations of its witnesses. In other words, BART expects the Court to revisit the trial not with the searching inquiry or stringency required in this Circuit, but as though all inferences were to be drawn in its own favor. This is the opposite of the approach that must be applied, as noted in the prior section of this brief. No matter how many times BART claims its positions to have been unrebutted,

uncontradicted, or unimpeached, the jury heard the rest of the story—the substantial, other half of the trial.

### A. Inconsistencies from BART's management witnesses undermined its case and led to the jury's first verdict that BART did not prove an undue hardship.

To begin with, consider the testimony the jury heard from BART's decision-makers. BART relied heavily at trial—and continues to invoke in its motion—on public health guidance and recommendations from entities such as the EEOC, CDC, and CalOSHA. But under cross-examination, BART's witnesses had to admit that they did not, in fact, follow that guidance consistently. Indeed, those agencies did not require them to deny any accommodations or fire any of their employees. Tr. 398:25-394:1. And when the CDC and other public health agencies began recommending booster shots as efficacy of the first vaccines waned, BART inexplicably opted not to mandate them (Tr. 407:17-19), leaving its remaining workforce less than fully vaccinated. Mr. Lau further testified that he consulted with other transit agencies in Northern California, but he did not bother to find out how they were handling accommodation and exemption requests. Tr. 404:3-19. The jury was rightly skeptical of BART's claimed undue hardship; even though additional evidence on this point was excluded, as the Court is aware many of these same public agencies were more accommodating to their employees than was BART.

BART also pinned its hopes on the claimed ineffectiveness of any potential accommodation other than remote work. Here again, the jarring inconsistency of BART's evidence was not lost on the jury and supports its verdict. At trial and in its motion, BART doubles down on its insistence that the protocols it mandated throughout the pandemic—masks, social distancing, testing, and surface cleaning among them, were ineffective. BART Mot. at 7:1. Yet it was clear to the jury that this position evolved for purposes of litigation; it was never communicated by BART at the time to its employees. Tr. 394:12-15. BART's actions of continuing to mandate protocols it now downplays is disingenuous at best.

A rational trier of fact can infer pretext from weaknesses, inconsistencies, and contradictions in an employer's proffered business justifications for its decisions. *O'Neal v. Ferguson Constru. Co.*, 237 F.3d 1248, 1254 (10th Cir. 2001).

The jury could and did reasonably perceive that these shifting and inconsistent rationales fatally undermined BART's credibility. And BART held the burden of proof for the first phase of trial as to its affirmative defense of undue hardship.

Much more can be said about BART's inconsistencies on this point, which Plaintiffs will attempt to condense. BART's witness Shane Edwards serves as the Assistant General Manager of Operations. Tr. 509:1. He was never contacted by Human Resources regarding an accommodation for any employee. Tr. 530:22-25.

Mr. Edwards testified that he kept the employees safe during the pandemic period of 2020 through parts of 2022. Tr. 531:1-24. The methods used to maintain safety during that period were also effective to keep employees safe during the COVID-19 vaccination period. Tr. 531:1-532:5. He was in charge of 75 percent of the workforce (3,200 employees). Tr. 536:24-537:4.

The disconnect was not lost on the Court, which noted, "[T]o my mind, your own witness, Mr. Edwards, gave the case away by saying that the—all the other things were effective and safe. So, the workplace was already safe. Why did you even need these? That was pretty good for the plaintiff." Tr. 593:10-15.

According to BART's numbers, its masking/testing/cleaning/social distancing policies were indeed effective: the general population was being hospitalized at a rate of 2.6 percent and dying at 0.6 percent. Yet BART's workforce—vaccinated and otherwise—

experienced far lower numbers: 5 hospitalized and 3 deaths out of about 4,000 employees, or .00125 percent and .00075 percent, respectively.

Alaric Degrafinried served as the Assistant General Manager for Administration. His testimony from the July trial was read to the jury at the end of phase one in which he was asked, "during the pandemic, do you believe that BART kept passengers safe from COVID while riding the trains?"  He answered, "I think we tried, yes." Asked if this was "true whether passengers were vaccinated or not," he again answered, "I think we tried, yes." Tr. 689:3-9.

Veronica Thomas served as the Director of Human Resources. Like Mr. Degrafinried, she did not appear so a portion of her testimony was read to the jury, as follows: "Were you ever told by someone in BART management that unvaccinated employees would pose a danger of some kind? ANSWER: No." Tr. 685:23-25.

Moreover, BART's witnesses opined on protective measures that were or might have been undertaken in the Plaintiffs' workspaces when their personal observations were clearly lacking. Take, for instance, Rod Lee's noncredible testimony about the lack of partitions in Rosalind Parker's work area, and the necessity of her use of shared restrooms and a breakroom. Tr. 461:11-14. She contradicted his testimony with a level of detail that lent her more credence than Mr. Lee, who was neither her immediate supervisor nor that supervisor's immediate supervisor. Tr. 564:3-565:4. Or consider the testimony of Shane Edwards, who claimed specific knowledge of Plaintiffs' work responsibilities and sites when he supervised 3,200 such employees. Tr. 509:21-25. The jury was not obligated to believe such testimony that could just as easily indicate either remarkable powers of recall or a tendency to overstate and exaggerate. Juries are not obligated to accept testimony by company witnesses as gospel.

*Chicago, R.I. & P. R. Co. v. Howell*, 401 F.2d 752 (10th Cir. 1968) (upholding jury verdict for plaintiffs where jury disbelieved company witnesses). BART Mot. at 16:27.

When BART's General Manager, Robert Powers, took the stand, the jury heard something else remarkable: BART went to great lengths to avoid layoffs even though its ridership had plummeted. Tr. 447:8-9. It did so with hundreds of millions of federal dollars. Tr. 449:1-11. Instead, the workers BART chose to fire or force out were the religious employees it refused to accommodate. Tr. 429:1-3. The reasonable inference of this testimony—that BART had both the resources and the excess workforce to have accommodated the plaintiffs—was not lost on the jury.

Plaintiff Rivera testified that other similarly situated employees in his department were afforded the opportunity to work remotely, but he was given no such option as an accommodation. Tr. 648:13.

And then there is Mr. Maplestone, BART's decision-maker who ultimately rejected every possible accommodation. Maplestone's cringe-inducing form letters denying every religious objector either an exemption or an accommodation were enough in and of themselves to convince a reasonable jury that BART did not take the process seriously and was not acting fairly toward dedicated, longtime employees seeking accommodation. His attempts to explain away why even Ms. Lewis-Williams posed a danger to her co-workers and BART customers when she was thirty-nine miles away from work may have been the single most damaging segment of testimony in the entire trial for the defense. Tr. 498:22-25. It was perhaps equaled only by his later attempt to feign personal knowledge of Ms. Lewis-Williams' interview, when cross-examination revealed he had not in fact participated or been present. Tr. 502:24.

---

PLAINTIFFS' OPPOSITION TO BART'S MOTION FOR NEW TRIAL

When the Plaintiffs testified in phase one, they explained how they believed they could have been accommodated, in contradiction of BART's position. Tr. 495:1-7. Since BART's decision-maker, Mr. Maplestone, did not actually visit any of the Plaintiffs' worksites before determining no accommodation was possible, the jury could reasonably conclude BART had not met its burden of proving undue hardship by a preponderance of the evidence.

The jury heard Mr. Maplestone's inflexibility with Mr. Mitchell's request:

> 17  Q.  Did Mr. Mitchell try to submit a second application in
> 18  January of 2022?
> 19  A.  Yes.
> 20  Q.  Did BART consider it?
> 21  A.  No, we did not.
> 22  Q.  Why not?
> 23  A.  Because this -- this was a sincerely held belief that you
> 24  had, and so he was given -- everyone was given one opportunity
> 25  to do a religious request.

Tr. 1023:17-25.

The jury also heard how Rosalind Parker was penalized for not responding to an interview request with Mr. Maplestone when she had already been placed on leave and could not access her inbox, then given a perfunctory, after-the-fact interview in which he did not change his preconceived plan to deny her exemption request. Tr. 1031:14-15.

And who can forget Mr. Lockett—denied an accommodation after thirty-three years of faithful service to BART, and ten years of perfect attendance. Tr. 820:3. He deserved better—an accommodation process where his request would be heard and considered, not dismissed out of hand.

The jury reasonably concluded that BART did not shoulder its burden on undue hardship.

**B.  BART's after-the-fact expert witnesses could not salvage the damage done by its decision-makers to its case.**

In an attempt to fill in what was lacking in the testimony of its decision-makers, BART put forward two experts who it hoped would boost its management employees' explanations for their decisions. Yet even BART's revisionist history cannot quite mask the disconnect between what it knew when it terminated or forced out the Plaintiffs, and what the experts surmised long after the fact.

The jury heard that Dr. Lewnard and Ms. McClellan were not retained by BART until late 2023, approximately two years after its vaccine mandate. Tr. 217:10-12; Tr. 292:24-293:1. They could not and were not able to testify as to whether BART officials were actually aware of or relied on the specific studies and guidance which the experts put forward. BART Mot. at 7:25-28. The jury could have reasonably been skeptical about the experts' opinions and biases when the experts opined about the Plaintiffs' specific workplaces they had never actually visited. Tr. 302:15-303:3. And the jury was entitled to devalue Dr. Lewnard's after-the-fact testimony when it was detailed in cross-examination how his own research had been funded by vaccine manufacturers, and that he had coauthored journal articles with employees of the vaccine manufacturers whose efficacy he now touted.

Even laying aside this significant undermining of the experts' credibility through cross-examination, the jury heard perplexing, circular reasoning from BART's experts such as Ms. McClellan's statement that where people are present, COVID-19 is present. Tr. 300:1-2. The jury could and did reasonably infer that eliminating the unvaccinated was not the only or most reasonable option for BART.

BART itself now seeks to recast Dr. Lewnard for the first time as a "historian." BART Mot. at 18:13-25. This is extraordinary. Nowhere during trial, immediately after trial, or in his foundational expert report did BART suggest any such thing. Such argument is therefore waived, though it reveals the lengths to which BART's motion goes in seeking to rewrite the script and escape an unfavorable jury verdict.

BART implies that, whenever one side has an expert and the other chooses cross-examination rather than a rebuttal expert as its primary means of convincing the jury, the side with the expert must win as a matter of law. This would, of course, usher in an untenable new era in this District and needlessly escalate costs when a party otherwise reasonably calculates that experts will not assist the jury. It follows from BART's argument that, even had the Plaintiffs chosen to call Dr. Risch as a rebuttal expert, BART would have pointed out that Plaintiffs did not bring in an industrial hygienist, and thus should lose on a Rule 50 motion for that reason alone. BART's notion that the side with the one additional expert is necessarily unrebutted and must win, even when cross-examination has exposed the weaknesses of their testimony, would deprive the jury of its vital function to weigh credibility. As will be more fully explained in Section C below, the cases put forward by BART do not come close to establishing such a principle. Such a holding would also conflict with Jury Instruction No. 10 on experts which was given to the jury and states in relevant part: "These are persons who, because of education or experience, are permitted to state opinions and the reasons for their opinions. Opinion testimony should be judged just like any other testimony. You may accept it or reject it and give it as much weight as you think it deserves, considering the witness' education and experience, the reasons given for the opinion, and all the other evidence in the case." BART's attempted elevation of its experts to near-infallible status belies what this Circuit has long explained about the proper function of experts. While their testimony may touch on ultimate issues in the case, they cannot be allowed to supplant the jury's vital role. Experts who undertake to tell the jury what result to reach are not assisting them but rather improperly substituting the expert's own judgment. *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017).

BART seeks to take one large step even further than this. Having failed to persuade the jury, BART asks the Court to simply substitute its experts' judgment for that of the jury. If accepted, this would constitute reversible error.

BART's insistence that no reasonable jury could have found that it failed to meet its burden proves too much. With the evidence and inferences construed in the light most favorable to the non-moving party—the Plaintiffs in this instance—BART is not entitled to judgment as a matter of law.

## III. BART's proffered authorities do not support, and in many ways contradict, its position.

BART cites twenty-eight cases in its motion, most of which are far removed from the employment discrimination setting. In this vein, BART seeks assistance from contexts as varied as patent infringement, products liability, railroads, shareholder suits, and habeas relief.

### A. The Ninth Circuit has been especially clear that employment discrimination suits should typically go to a jury.

In the Rule 56 context found by the Supreme Court to be analogous to Rule 50, this Circuit holds:

> In evaluating motions for summary judgment in the context of employment discrimination, we have emphasized the importance of zealously guarding an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses.

*Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008).

### B. BART's non-employment and out-of-jurisdiction cases do not help its argument.

It is far from evident what BART hopes to gain from instead pointing the Court to authorities such as *Chicago, R.I. & P. R. Co. v. Howell*, 401 F.2d 752 (10th Cir. 1968). There, the court upheld a judgment for plaintiffs against a railroad, based on circumstantial evidence about the origins of a fire. The court explained that the jury properly weighed credibility and disbelieved the company's witnesses. This is a reason to uphold, not overturn, the verdicts now before this Court.

Equally adverse to BART are decisions it cites such as *Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365 (9th Cir. 1987). It considered post-trial motions by a

---

PLAINTIFFS' OPPOSITION TO BART'S MOTION FOR NEW TRIAL

defendant bank seeking to set aside a jury verdict in favor of a prospective borrower. The Ninth Circuit rejected the defendant's arguments and affirmed the district court's denial of its Rule 50 motion.

Plaintiffs will not belabor the point but will briefly mention each of BART's other cited authorities so as not to waive rebuttal of them. In short, the present case has little if anything in common with *Chesapeake & Ohio Ry. Co. v. Martin*, 283 U.S. 209 (1931) (mis-delivery of a shipment of potatoes); *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1136 (9th Cir. 2014) (suit by city for contamination of its groundwater); *Cunningham v. Wong* (denying habeas relief to inmate); *Imperium IP Holdings (Cayman) Ltd. v. Samsung Elecs.*, 757 Fed. Appx. 974 (Fed. Cir. 2019) (unpublished) (patent infringement); *In re ResCap Liquidating Trust v. Home Loan Ctr., Inc.*, 399 F. Supp. 3d 804 (D. Minn. 2019) (described by the court as a highly complex contractual indemnification dispute); *Quinn v. Southwest Wood Prods., Inc.*, 597 F.2d 1018 (5th Cir. 1979) (allegedly defective design of ladder); *Quintana-Ruiz v. Hundai Motor Corp.*, 303 F.3d 62 (1st Cir. 2002) (allegedly defective design of airbag); *Security-First Nat'l Bank v. Lutz*, 322 F.2d 348 (9th Cir. 1963) (shareholder suit against a bank president, his wife, and the corporate accountant); *Selle v. Gibb*, 741 F.2d 896 (7th Cir. 1984) (copyright infringement dispute between songwriters); *Sip-Top, Inc. v. Ekco Grp., Inc.*, 86 F.3d 827 (8th Cir. 1996) (breach of contract, unfair competition, trade secrets, and tortious interference case between a manufacturer and a discount store chain); *Fisher v. City of San Jose*, 558 F.3d 1069 (9th Cir. 2009) (reversing District Court's grant of Rule 50 motion to arrestee); *NewSCI, Inc. v. Staffing 360 Sols. Inc*, 865 F.3d 251 (5th Cir. 2017) (affirming denial of new trial to defendants in contract dispute); *Silver Sage Partners Ltd. v. City of Desert Hot Springs*, 251 F.3d 814 (9th Cir. 2001) (reversing grant of new trial to city in developers' suit).

Suffice it to say for present purposes that none of the foregoing cases put forward by BART come close to requiring the extraordinary relief it seeks here. Indeed, many of the foregoing decisions reinstated jury verdicts and rejected Rule 50 and Rule 59 motions.

### C. The overwhelming weight of authority in this Circuit and from the Supreme Court upholds jury verdicts in employment discrimination cases.

The employment discrimination decisions put forward by BART merit more attention than the previous but suffer from other drawbacks for the defense.

In *Reeves*, the Supreme Court addressed whether a defendant employer was entitled to judgment as a matter of law where the employee's successful discrimination case had consisted of meeting his prima facie burden and sufficient evidence for the trier of fact to disbelieve the employer's legitimate, non-discriminatory explanation for its actions. 530 U.S. at 137. The Supreme Court unanimously sided with the employee in upholding the jury verdict.

Consistently with this approach, in *Hemmings v. Tidyman's, Inc.*, 285 F.3d 1174 (9th Cir. 2002), the Ninth Circuit affirmed the district court's denial of Rule 50 arguments by an employer, protesting jury verdicts in a Title VII case. The court reversed and remanded only as to damages, agreeing with the plaintiffs that punitive damages should have been available while clarifying limits on double damages under Washington state law.

In *Dark v. Curry County*, 451 F.3d 1078 (9th Cir. 2006), the Ninth Circuit reversed summary judgment for an employer in an employee's disability discrimination suit. It held that weighing the employer's proffered reasons for terminating the employee should have gone to the jury, not been resolved as a matter of law. Plaintiffs heartily agree.

In *Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276 (9th Cir. 2001), a former employee brought retaliation, disability discrimination, and other civil rights claims against her employer, and a jury found in her favor while deadlocking as to punitive damages. The district court granted the employer's Rule 50 motions. On appeal, the Ninth Circuit reversed, agreeing with the district court's finding on disability discrimination but in

all other respects reinstating the jury's verdict and findings while remanding for a new trial on punitive damages.

BART initially comes closer with *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236 (9th Cir. 2014). There, the court affirmed a jury verdict in favor of an employer on an FMLA claim. Substantial evidence supported the jury's conclusion that plaintiff had not wanted to use the leave time. But the court respected the jury's verdict, as it should here. This does not support, much less compel, the overturning of a verdict BART now seeks.

Meanwhile, in *Makor v. Burlington Northern Santa Fe*, 680 Fed. Appx. 542 (9th Cir. 2017), the Ninth Circuit sided with an employer on a Rule 50 motion. But it did so in a non-citable, non-precedential memorandum disposition which contains few clues as to why the court reached this rare conclusion.

The weight of authority in this Circuit is to uphold jury verdicts in employment discrimination cases, absent rare circumstances. *Accord, EEOC v. Pape Lift, Inc.*, 115 F.3d 676 (9th Cir. 1997) (in disability discrimination case, affirming denial of judgment as a matter of law and reversing as to granting of judgment as a matter of law). Unpublished, out-of-jurisdiction, and otherwise irrelevant decisions cannot overcome BART's significant burden here, where the Ninth Circuit has set a high bar for Rule 50 and Rule 59 motions, rarely overturning a jury verdict.

**D.  Other non-binding decisions do not counsel a different result.**

Additional out-of-jurisdiction decisions put forward by BART do not lead to a different outcome. In *Herrmann v. Salt Lake City Corp.*, 21 F.4th 666 (10th Cir. 2021), the Tenth Circuit affirmed the district court's grant of summary judgment to an employer on retaliation claims. But it reversed summary judgment for the employer as to the employee's failure to accommodate claims. This does not help BART. Nor does *Lebarron v. Interstate Group*, 529 F. Supp. 3d 1163 (D. Nev. 2021). There, the court granted summary judgment to an employer on an employee's negligent hiring and supervision claims. But the court denied

summary judgment to the employer on the employee's failure to accommodate and retaliation claims, where the reasonableness of leave as a potential accommodation was disputed.

In *Garcia-Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638 (1st Cir. 2000), the First Circuit also reversed the district court's grant of summary judgment to an employer in an employee's disability discrimination suit. Rather than remanding the case for a jury trial, though, the appellate court directed entry of judgment for the plaintiff. The court thought little of the employer's proffered reasons as to why it could not accommodate the plaintiff.

A union was able to secure JMOL and a conditional new trial in *Pease v. Prod. Workers Union of Chi. & Vicinity Local 707*, Case No. 02 C 6756, 2004 WL 526369 (N.D. Ill. 2004) (unpublished), but this was a labor case involving claims against an employer for violating a collective bargaining agreement, and against a union for breaching a duty of fair representation. The union was able to show that, when another employee with greater seniority returned to work, the plaintiff lost his spot under the CBA. BART is not arguing here, nor could it, that longtime employees such as Mr. Lockett, with his thirty-two years of service, were somehow lacking in seniority that cause their terminations and forced retirements.

Lastly, in *Wood v. Green*, 323 F.3d 1309 (11th Cir. 2003), the Eleventh Circuit handed judgment as a matter of law to an employer after an employee had requested an indefinite leave and was instead terminated. This appears to conflict with the First Circuit's holding in *Garcia-Ayala*. But in either event, this employer had gone to considerable lengths to accommodate the employee before termination; it had created a new position and granted numerous other leaves of absence over a substantial number of years to accommodate his cluster headaches.

1

**IV.**    **BART overstates the significance of closing arguments and their effect even on the jury's prior deliberations and verdict.**

2

For the second phase of the trial, BART avoids directly attacking the jury's verdict as

3

to either the Plaintiffs' prima facie case or the damages awarded. Instead, BART pursues

4

FRCP 59 relief for the same reasons as it attacked the phase one verdict, and additionally for

5

what happened in the closing moments of cross-examination of its lone phase two witness

6

and in the closing arguments which followed.

7

A Rule 59 motion may be based on insufficiency of the evidence, misconduct of

8

counsel that deprived the movant of a fair trial, or an excessive verdict. *Hemmings*, 285 F.3d

9

at 1189. A Rule 59 motion based on insufficiency of the evidence should be granted only if

10

the verdict is "against the great weight of the evidence" or it is quite clear the jury has

11

reached a "seriously erroneous result." *Id.*

12

BART argues perfunctorily that the evidence is insufficient, for the same reasons

13

discussed in the Rule 50 portion of its motion. BART is mistaken for the many reasons

14

already set forth above, particularly in Section II, *supra*, which discussed the evidence.

15

BART therefore focuses its Rule 59 attack on alleged misconduct of plaintiffs'

16

counsel at the close of trial. Yet here again, BART's own proffered authority and its

17

omission of more nuanced trial proceedings undermines its argument.

18

In order to overturn the jury verdict on this ground, BART must show that the flavor

19

of misconduct "sufficiently permeates an entire proceeding to provide conviction that the

20

jury was influenced by passion and prejudice in reaching its verdict." *Id.* at 1192.

21

The court considers the totality of the circumstances, including the strength of the

22

case, possible relevance of the comments, frequency, response of the court and parties, and

23

the resulting verdict. *Id.* at 1193. The remedy of mistrial will be granted only in

24

"extraordinary cases," *id.* at 1193, such as where the closing argument blatantly utilizes

25

incendiary racial terms and appeals to ethnic prejudice against the losing party. *Id.* at 1193-

26

27

28

PLAINTIFFS' OPPOSITION TO BART'S MOTION FOR NEW TRIAL

1194 (citing and discussing *Bird v. Glacier Elec. Coop, Inc.*, 255 F.3d 1136, 1152 (9th Cir. 2001) (comity with tribal courts)).

In *Hemmings,* plaintiff's counsel made what the district court characterized as a "totally improper" statement in closing argument that the defendant had not corrected its discriminatory policies; they knew they should have done so because they had been sued before by plaintiff's counsel; and this proved the case as to business necessity. *Id.* at 1192-1193. While the defense in *Hemmings* had failed to object, the Ninth Circuit agreed the comments were improper but could not say that, in the absence of the comments a different verdict was likely. *Id.* at 1194. The same is true here.

BART provides more argument than authority for its proposition, conveniently forgetting its own role in the events of which it now complains.

While BART speciously alleges a planned, coordinated strategy by Plaintiffs to violate the Court's ruling on a motion in limine, it omits the triggering event. Plaintiffs had no such plan before BART's counsel elicited testimony from BART witness Rodney Maplestone about the many BART employees who did not want to take the vaccines and the many form letters for exemption BART received. Tr. 1014:25-1016:3; Tr. 1040:14-19. BART's counsel returned to this theme in his closing argument. Tr. 1077:12-16; Tr. 1078:14-19.

After some discussion by BART's counsel with Maplestone emphasizing the many employees who did not want to be vaccinated, the colloquy culminated as follows:

> 14  Q.  Was BART aware and was Leave Management aware that there
> 15  were form letters available on the internet that employees
> 16  could pull down and copy to try to get religious exemptions?
> 17  A.  Yes.
> 18  Q.  Were there a lot of them?
> 19  A.  We received a lot of them, yeah.

Tr. 1040:14-19.

Based on this testimony, Plaintiffs' counsel sought to briefly clarify in cross-examination what Maplestone had obliquely referenced as many or lots of exemption requests and employees who did not want to be vaccinated, as follows:

> 10  Q.  Did I hear you correctly that you testified that there
> 11  were many employees who requested religious exemptions for
> 12  vaccinations?
> 13  A.  Yes.
> 14  Q.  How many were there?
> 15  A.  There were 2- -- over 200 people.

Tr. 1042:10-15.

BART's counsel had also elicited testimony from Maplestone about the "fairness" and attempt to be "fair" they had attempted in light of the many employees desiring exemption. Tr. 1014:25-1016:3. BART wanted to ensure cross-examination would not be permitted to expose the unfairness—by the numbers—of a process where Maplestone ensured no employee could actually succeed.

BART returned to its theme in the closing argument from BART's counsel:

> 12  And BART had to be fair here because you heard this
> 13  morning that there were hundreds of employees who wanted
> 14  exemptions from the vaccine requirement. Those were just
> 15  people who filed applications. You also heard dozens, dozens
> 16  more who didn't want to be vaccinated. Okay? . . . .
>
> 14  The problem here, though, was there's all sorts of reasons
> 15  people don't want to get vaccinated.  All sorts of reasons.  A
> 16  lot of them secular.
> 17  So to apply this exemption fairly to everybody, BART had
> 18  to determine:  Is this person coming to us because they have a
> 19  secular concern about vaccination or a religious one?

Tr. 1077:12-16; Tr.1078:14-19.

BART's cries of unfairness and prejudice now ring hollow; what it sought and seeks is one-sidedness, not balance or fairness.

BART wanted to leave the impression with the jury that many people were submitting form letters from the internet, while withholding from the jury the crucial further

information that Maplestone ultimately found ways to deny every applicant either an exemption or an accommodation.

The Court's subsequent chastisement of Plaintiffs' counsel and admonitions to the jury more than offset any prejudice to BART; if anything, the curative instruction worked against the Plaintiffs by undermining their counsel's attempted argument. The jury's verdict in the second phase is modest, reasonable, and not reflective of any inflamed prejudices. *Accord, Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1107-1108 (9th Cir. 1991) (even though counsel's closing argument improperly called on jury to punish defendant, lack of excessive verdict supported denial of new trial).

By contrast, a new trial based on attorney misconduct may be warranted where counsel repeatedly attempts to introduce excluded, inflammatory, and suspect if not fabricated evidence throughout the trial. *Anheuser-Busch, Inc. v. Nat. Bev. Distribs*., 69 F.3d 337, 346 (9th Cir. 1995).

When the defense believes attorney misconduct has occurred during closing argument, the proper approach is to object, which allows the district court to examine the prejudice and admonish counsel or issue a curative instruction if warranted. *Kaiser Steel Corp. v. Frank Coluccio Constr. Co.*, 785 F.2d 656, 658 (9th Cir. 1986). That is what happened here. BART's argument that such admonishments and curative instructions are inherently insufficient is contrary to precedent. So, too, is BART's further stretch claiming that even the first verdict adverse to it, reached before any claimed misconduct happened, should be thrown out.

BART's motion should therefore be denied.

## CONCLUSION

BART seeks a third do-over which would annul the jury's important deliberations and verdicts based on days of testimony, numerous witnesses, and dozens of documents. The extraordinary relief BART seeks would be neither just nor wise. For very good reasons, the

Federal Rules of Civil Procedure do not support such a move. BART's motion should be denied as to both Rule 50 and Rule 59. If the Court is inclined to grant the motion in any respect, it should do so only as to the second phase of trial. This would, of course, open the possibility of even greater damages being awarded against BART.

Respectfully submitted this 14th day of November 2024,

/s/ Matthew B. McReynolds
Kevin T. Snider, Counsel of Record
Matthew B. McReynolds
Milton E. Matchak
PACIFIC JUSTICE INSTITUTE
P.O. Box 276600
Sacramento, CA 95827
Tel. (916) 857-6900
Emails: ksnider@pji.org; mmcreynolds@pji.org; mmatchak@pji.org