UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONYA LEWIS-WILLIAMS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT,<br><br>Defendant. | No. C 22-06119 WHA<br><br>Consolidated Cases:<br>C 22-09193 WHA<br>C 22- 07720 WHA<br><br>**ORDER DENYING DEFENDANT'S RULE 50 AND RULE 59 MOTIONS** |

# INTRODUCTION

In this Title VII and FEHA religious-accommodation action, defendant-employer challenges a jury verdict entered and judgment in favor of plaintiff-employees.

# STATEMENT

In 2021, at the height of the pandemic, the Bay Area Rapid Transit District (BART) adopted a requirement that all of its employees be vaccinated against COVID-19. A large number of employees refused and applied for religious exemptions. BART determined that some (but not all) of the requests were based on sincere religious belief. BART further found, however, that any accommodation would be an undue hardship on BART and all were terminated or forced into retirement. Many sued herein and were scheduled for sequential

trials in manageable groups. (This was not a class action given that each plaintiff's circumstances were individualized.)

The first group of seven went to trial in July 2024. That jury rendered a partial verdict in favor of plaintiffs on the sincerity of their religious objections but deadlocked 7-1 in favor of BART on whether it had proven that any accommodation as to those seven would be an undue burden. Those plaintiffs settled after the jury was discharged. In fact, all plaintiffs settled except for a last group of six.

In October 2024, the last group of six went to trial, bifurcated into two phases, the trial now at issue. The first phase addressed BART's affirmative defense of undue hardship. That jury found against BART's affirmative defense of undue hardship (in the first phase) and in favor of plaintiffs on all remaining issues (in the second phase). The jury awarded all six damages totaling $7,825,859.

BART now moves for a judgment as a matter of law under Rule 50(b) and for a new trial under Rule 59. This order follows full briefing, oral argument, and supplemental briefing.

**ANALYSIS**

**1.     BART'S RULE 50 MOTION.**

A Rule 50 motion must be denied when, under the jury instructions as given, the trial evidence admits of a rational line of reasoning in favor of the verdict (even if it seems against the weight of the evidence). A Rule 50 motion is not an occasion to complain about legal error in the instructions, for any such error could only be grounds for a new trial, not for judgment notwithstanding the verdict (except in the rarest of circumstances). Nor is it an occasion to complain about evidentiary rulings or misconduct by counsel, which, at most, can only lead to a new trial, not a reversal of judgment.

When the Rule 50 movant had the burden of proof on the issue, such as on an affirmative defense, the movant might have lost on the simple ground that it had not carried its burden of proof, so the movant must show that the evidence compelled only one verdict, taking into account the burden of proof standard.

1    BART argues that it is entitled to a judgment as a matter of law on its affirmative defense that it could not reasonably have accommodated these six unvaccinated plaintiffs in the workplace without suffering an undue burden, an issue on which BART had the burden of proof. To support its Rule 50 motion, BART presents three arguments.

*First*, BART asserts that it presented "undisputed" evidence that permitting an unvaccinated employee to continue working would increase the risk of spreading COVID-19 to other employees. More specifically, BART argues that its witnesses presented "uncontroverted, unimpeached testimony" regarding the agency's reliance on public health guidelines when implementing the vaccine requirement. To support this, BART refers to the testimony of a few BART employees, which included Jeff Lau, BART's Chief Safety Officer.

In his testimony, for example, Chief Safety Officer Lau explained that he and BART's pandemic task force had consulted Dr. John Swartzberg, an infectious disease expert at University of California, Berkeley (not a trial witness), and that he had communicated with several public health officials on a regular basis. He also explained that at the time the vaccine requirement was adopted by the board, vaccination was the most recommended action that individuals could take to protect against COVID-19 (Dkt. No. 231 at 3). It is unclear if Dr. Swartzberg advised Safety Officer Lau about the efficacy of non-vaccine precautions or if he advised Lau regarding the vaccine. We do not know the specifics of the conversations. Likewise, we do not know the specific recommendations given by the public health officials whom Lau consulted.

Curiously, BART presented zero evidence of the information actually relied upon by the BART board in adopting its mandatory vaccine requirement. For example, we saw no decision memorandum presented to the board. We saw no resolution adopted by the board reciting any evidence. We heard no testimony from anyone who presented scientific evidence to the BART board or who made the decision. Instead, BART's trial counsel elected to present after-the-fact litigation experts. From this, BART counsel argued that the jury should infer that the board had acted in reliance upon the same scientific themes expressed at trial by the two experts. But

this inference was never actually proven, and we still do not know what evidence the board actually had before adopting the vaccine requirement.

Nevertheless, the jury was instructed that it was within the legal authority of BART to adopt the vaccine mandate (or not to do so) and that the jury could not second-guess BART's decision to require a vaccine mandate (Phase One, Instruction No. 15). The jury issue was the extent to which BART could have accommodated religious objections.

BART insists that it presented "unrebutted" scientific expert testimony to support its argument that there were no other options as effective as the vaccine to safeguard against COVID-19 during the relevant time period. The first expert witness was Dr. Joseph Lewnard, an infectious disease epidemiologist from the University of California, at Berkeley (not the same expert contacted earlier by Mr. Lau). In its motion, BART focuses on aspects of Dr. Lewnard's testimony where he explained that PCR testing was not an effective measure to protect the ill from transmitting COVID-19 and that nothing else at that time was as effective as the vaccine to protect people from COVID-19. When cross-examined by plaintiffs' counsel, Dr. Lewnard admitted that he did not advise BART of his expert opinion during the relevant time period, nor could he confirm what BART actually knew or relied upon at that time.

Likewise, Dr. Nancy McClellan, the Industrial Hygienist, advanced an extreme position that social distancing, disinfecting surfaces and wearing masks did virtually no good. Our jury could have reasonably concluded that she had exaggerated the benefits of vaccination and understated the benefits of alternatives and therefore lacked credibility.

Since BART was the only side to present experts (on this topic), BART's Rule 50 motion presupposes that the jury was obligated to accept their opinions. That is incorrect. That is not how jury trials work. In light of the large sums paid to the experts by BART, our jury was entitled to find that they were "bought and paid for," were merely parroting the "company line," and were not credible in light of their bias, common sense, and other evidence. An expert witness is like any other witness, and it is up to the jury to decide how much weight their testimony deserves (Phase One, Instruction No. 10).

4

BART's argument further overlooks the fact that plaintiffs' counsel cross examined the expert witnesses and developed evidence undermining their direct testimony. And, when BART presented Michael Edwards, a BART supervisor, he admitted on cross-examination the effectiveness of social distancing, masks, and other pre-vaccine precautions, contradicting the experts' view that masking, wearing gloves, and social distance were not effective.

The jury was instructed that any accommodation that increased a health or safety risk was an undue burden (Phase One, Instruction 20). BART insists that allowing unvaccinated employees in the workplace would have increased health risks no matter what tests, N95 masks, antiseptics, social distancing, or ventilation were used. On this record, a jury could reasonably have found BART, who had the burden of proof, had not proven this proposition as to these six plaintiffs.

*Second*, BART argues that because plaintiffs could not have performed their job duties remotely, there was no way BART could have accommodated plaintiffs without undue hardship. For the reasons stated above, this is rejected.

It is also important to note that our instructions, as given, did not require that any accommodation require the employee to continue fulfilling the essential job duties. Unpaid leave, therefore, would have been an acceptable accommodation under our instructions, so long as there was no undue burden. BART did not object to these instructions on any legal ground. At the charging conference, BART could have requested an instruction stating that unpaid leave was not a viable accommodation but failed to do so. And, it could have done so at any time prior to submission to the jury (or even prior to verdict) but failed to do so. Instead, BART elected to simply argue to the jury that unpaid leave would have been for an indefinite period and thus too burdensome.

*Third*, BART repeats its jury argument that, on the facts, unpaid leave could not have been a potential accommodation because the unpaid leave would have been indefinite, and BART did not know whether or when its vaccine mandate could be lifted.

On the contrary, a reasonable jury could have found that although there would have been an indefinite aspect to this accommodation, the burden of it would be that BART would merely

5

have to find jobs for them upon their eventual return to work.  BART readily admitted before the jury that all the plaintiffs were excellent employees and BART hated to lose them.  To be sure, allowing them unpaid leave would have posed an additional labor cost but it offered the reward of keeping excellent employees.  The jury could have reasonably found that, for six employees, this would not have been an "undue burden" for a large enterprise like BART.

A reasonable jury could also have also found that BART failed to engage in the interactive process (in search of an accommodation) and had further not carried its burden to prove that no accommodation whatsoever would have been possible (Instruction No. 14, Phase One).

Simply put, on the instructions given and evidence received, a reasonable jury could have found that BART had not carried its burden of proving its affirmative defense.  For the above reasons, BART's motion for judgment as a matter of law under Rule 50 is **DENIED**.

This order now turns to BART's motion for a new trial under Rule 59.

### 2. BART'S RULE 59 MOTION.

A trial court may grant a new trial "for any reason for which a new trial has therefore been granted in an action at a law in federal court." FRCP 59(a).  Such grounds include a verdict that is "contrary to the clear weight of the evidence, or is based upon evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice." *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 819 (9th Cir. 2001).

In evaluating whether the verdict was against the clear weight of the trial evidence, this order notes that this was not an "anti-vaxxer" trial.  No one contended vaccines were ineffective or dangerous.  Rather, the main jury issue was whether BART could have accommodated plaintiffs' religious beliefs without undue burden.  It was not clearly against the weight of the evidence, on our instructions as given, to have concluded that BART had not proven its affirmative defense.

BART repeats that permitting plaintiffs to continue working in person while unvaccinated would have posed an undue burden and each plaintiff could not have performed

6

their essential job duties remotely. On this record, these repetitive points fail, for the reasons stated above. The verdict was not against the clear weight of the evidence even though BART put on a decent case.

Still, two imperfections marred our trial. The devil being in the details, the history must be laid out.

### A. THE FLAWED JURY INSTRUCTIONS IN PHASE ONE.

In phase one, perfect jury instructions would have ruled out unpaid leave as an accommodation under the law. The instructions omitted this caveat. BART should have asked for this caveat to be included once the point surfaced at trial but did not. Here, now, is the step-by-step history.

Prior to the first trial in this matter (in July), the parties submitted joint stipulated jury instructions (Dkt. No. 95). Those stipulated to jury instructions included the following:

> A reasonable accommodation may include a change in such things as ordinary work rules, facilities, conditions, or schedules, but does not include elimination or change of essential job functions, assignment of essential job functions to other employees, or lower productivity standards.

(Dkt. No. 95 at 13).

In the July trial, given the issues in play, this sentence was deleted by the judge to reduce the length and complexity of the instructions. The deletion was not objected to by either side. Specifically, as the evidence was nearing completion, the judge issued a proposed charge to the jury for review by counsel (Dkt. No. 138). The notice stated:

> Appended hereto are copies of the draft charge to the jury and a special verdict form given to both sides on July 11, 2024, for discussion with the Court at the charging conference on July 12, 2024, at a time to be determined. Counsel filed a joint set of proposed jury instructions on June 5, 2024 (Dkt. No. 95). The proposed charge is based on those proposed instructions, the Court's usual instructions, and the development of issues during the course of trial. Subject to the upcoming charging conference, the Court believes the proposed charge adequately and fairly covers all issues still in play. *In order to give the district judge a fair opportunity to correct any error as a matters now stand, counsel must, at the charging conference, bring to the judge's attention any addition, subtraction, or modification or other objections or proposal for the jury instructions.* ***Otherwise, all such points shall be deemed waived and it will not be sufficient***

7

> *merely to argue after the verdict that a proposed instruction (even if stipulated) filed earlier in the proceedings somehow was not adopted.* Rather, any such proposal that counsel still cares about must be raised anew at the charging conference. The charging conference shall be conducted so as to give full and fair opportunity for counsel to raise any and all objections and proposals.

(Dkt. No. 138 at 2-3) (emphasis added). During the charging conference, held the next day, the judge again said: "But, again, the fact that you previously submitted some instructions is irrelevant. At this point, you have to remind me again because I prepared these instructions based on the way the case has been tried. In addition, along the way, I'll give you a chance to propose instructions that I have not included so in case I left something out by accident" (Dkt. No. 156 at 766).

So, the proposed charge in the July trial (the first trial) did not adopt the stipulated instruction concerning essential job functions. That issue was not germane to the seven plaintiffs then on trial. As stated, neither party objected to the omission, nor made any request for its re-insertion in the final charge.

Likewise, during the second trial in October, neither side raised this issue, as now detailed. On October 17, near the end of evidence, the judge filed a proposed set of jury instructions with an attached order which stated: "Appended hereto is a copy of the final charge to the jury and the special verdict form for the first phase. A charging conference will be held tomorrow, Friday, October 18, 2024, at 7:30am. Any and all objections or additions must be raised to be preserved for appeal" (Dkt. No. 203). Like the July instructions, the proposed October instructions omitted the instruction on essential job functions.

Early on the morning of October 18, we held a charging conference (prior to the end of evidence) during which both sides were invited to raise objections and propose amendments jury instructions. Nothing was said by anyone about the omitted instruction or about unpaid leave.[*]

---

[*] In phase two, for example, BART proposed adding a further definition of religion: "an isolated view not part of a religious belief system that one should not harm one's own body and a strong personal belief that a vaccine may do more harm than good is not a protected religious belief." Both sides had stipulated to that language prior to the first trial but it had been cut for the sake of brevity. During the charging conference, BART proposed that the language be added back in, and the judge agreed. The same thing could have

8

Later that day, as the trial evidence was winding down, Attorney Jessica Barsotti conducted a direct examination of Plaintiff Raymond Lockett. After she asked a question regarding the maximum amount of leave the union would permit, BART counsel objected:

> **[MS. BARSOTTI] Q**: And do you know what the union rules about the maximum amount of time somebody can be out on a leave of absence, if there is one?
>
> **MS. NEUTZEL [FOR BART]**: Objection, Your Honor.
>
> **THE COURT**: Sorry? What's the objection?
>
> **MS. NUETZEL**: Relevance.
>
> **THE COURT**: What is the relevance?
>
> **MS. BARSOTTI**: Because this is a potential accommodation that could have occurred.
>
> **MS. NUETZEL**: She's talking about events that occurred in '09, unrelated to any events –
>
> **THE COURT**: You mean you're saying that going out on a leave of absence would be a potential accommodation?
>
> **MS. BARSOTTI**: Yes.
>
> **THE COURT:** Well, without saying that I would agree or disagree with that, I'll let you pursue this. Objection overruled.
>
> **MS. BARSOTTI**: Thank you.

(Dkt. No. 214 at 41).

This exchange, coming after the charging conference, was the first time that plaintiffs insinuated that unpaid leave could have been a potential accommodation.

The jury proceedings continued until a fifteen-minute recess, after which recess there was brief colloquy among the judge and counsel (out of the presence of the jury). BART counsel could have but did not raise any issue about unpaid leave or suggest that the instructions be

---

occurred for the language concerning accommodations involve continuing with essential job duties.

9

1  amended to rule out unpaid leave as an accommodation. Plaintiffs then completed the

2  remainder of their case before the jury. BART had no rebuttal case. Once again, the judge

3  allowed a short recess, after which he said to counsel (outside the presence of the jury):

> **THE COURT**: We filed the Jury Instructions and verdict form. I think they're in accordance with what I said at the charging conference; but if you see some glitch, let me know, but otherwise we're not going to have any more conferences on it.

(Dkt. No. 214 at 119).

Again, BART counsel did not raise any issue with the judge regarding the content of the jury instructions or the verdict form. Both sides then gave their closing arguments. Plaintiffs' rebuttal argument raised unpaid leave as a possible accommodation without objection. BART did not ask for any change in the instructions. The jury was then instructed in accordance with the proposed charge as amended in the charging conference. The jury retired to deliberate. Later that afternoon, the jury returned a verdict against BART on its affirmative defense.

On October 21, at the outset of phase two, the judge asked BART counsel to file by the end of the day, a two-page summary of the post-trial motion which it would fully brief at a later time. In its two-page summary, BART argued that it should be granted judgment as a matter of law on the affirmative defense of undue burden because unpaid indefinite leave was unreasonable as a matter of law. This, however, came after the jury had already rendered a verdict for phase one. BART's motion would have been denied anyway on the ground that the jury could reasonably have decide that BART had not proven that masks, social distancing, and other precautions were not as effective as the vaccine.

BART should have proposed an amendment to the jury instructions to fix the "indefinite leave" problem and failed to do so. The judge was free to amend the instructions at any time prior to verdict for good cause. BART never asked to do so.

In sum, yes, the judge deleted a stipulated instruction in the July trial but both sides consented. Those instructions were carried over to the October trial. Amendments were invited and made. As it actually did on an unrelated point, BART should have asked to add the omitted instruction back in but failed to do so. BART must bear responsibility for this failure.

10

1    This omission, moreover, did not rise to the level of plain error and even if it did, the Court would not exercise its discretion to set aside the work of our jury.

### B. THE MISCONDUCT OF PLAINTIFFS' COUNSEL IN PHASE TWO.

The second imperfection in this trial was plaintiffs' counsel misconduct. Before the first trial in July, BART filed a motion *in limine* to exclude reference to other employees' cases not in suit. An order denied that motion. Counsel were permitted to bring out the fact that BART had denied each and every accommodation (and granted none) for some 180 employees. Plaintiffs' counsel, however, neglected to elicit this evidence in the first trial.

Before the second trial, however, the judge sua sponte stated he was inclined to reverse this ruling and invited comment. The invitation stated: "[i]ntroduction of that evidence would require BART to digress and to explain the reasoning underpinning over a hundred such decisions, none of which are at issue in this present action" (Dkt. No. 170 at 2). After reviewing both sides' responses, a subsequent order granted BART's motion *in limine*, excluding any evidence or argument regarding requests for exemptions or accommodations made or not made by BART for employees who were not on trial (Dkt. No. 184). That order found that the decisions were individualized inquiries; "the jury and the Court do not have the time and resources necessary" to review each of those decisions (*ibid*.). Therefore, plaintiffs were prohibited from eliciting testimony or presenting evidence regarding requests for accommodations or exemptions from those who were not in this suit, "unless BART opened the door" (*ibid*.). This was a ruling under Rule 403.

There were no violations of this order *in limine* in the first phase of the second trial concerning undue hardship (again, the affirmative defense was tried first). Therefore, the later violation could not have infected the verdict of phase one. Near, however, the end of the second phase concerning religious beliefs and damages, plaintiffs' attorney, Kevin Snider, cross-examined the head of BART's Leave Management team, Rodney Maplestone, in the presence of the jury:

>**Q**: Did I hear you correctly that you testified that there were many employees who requested religious exemptions for vaccination?
>
>**A**: Yes.
>
>**Q**: How many were there?
>
>**A**: There were 2—over 200 people.
>
>**Q**: All right. And how many did you grant?
>
>**A**: I don't – I don't recall the exact number right now.
>
>**Q**: Well, how about accommodations and religious exemptions, how many did you grant?

(Dkt. No. 229 at 48:10-19).

To this, BART's counsel immediately objected:

>**Attorney Hanlon**: Objection, Your Honor. We had an in limine on this.
>
>**Attorney Snider**: Your Honor—
>
>**The Court**: Sustained.
>
>**Attorney Snider**: He opened the door, Your Honor.
>
>**The Court**: Not wide enough.

(*id.* at 48:20-25).

The objection was immediately sustained. The judge made it clear that the door had not been opened.[†]

Despite this, plaintiffs' counsel began their rebuttal closing argument by broaching the very topic:

>**Attorney Jessica Barsotti**: Okay. I want to address a couple of things Mr. Hanlon just discussed. First of all, you know, there were 180 employees that requested a religious exemption out of 4200 employees at BART, right? And you didn't hear any evidence of any of them being accommodated or having their. . . .

---

[†] On direct examination, BART counsel had tried to show that BART had followed a fair procedure to adjudicate religious-objection claims. This was to be fair to those who had not made religious objections but nevertheless had sincerely opposed the vaccination on secular grounds. It might have seemed easy to repackage a secular objection as a religious objection. So, care was taken to make sure religious objections were sincerely held. This point was not enough to open the door to the separate fact that BART had made no accommodations for anyone whose religious exemption was granted.

12

(*id*. at 94). For BART, Attorney Hanlon objected, which was sustained. The judge immediately clarified to all in the courtroom, including the jury, that Attorney Jessica Barsotti had violated the order *in limine*:

> **The Court**: That is ruled — I told the lawyers early on we were not going to get into the issue of all — what happened with all of the other people because that would have been 180 more trials for you to — we'd have to go through all of them. I said we're not going to put the jury through what BART did or did not do with respect to the 180, or whatever the number is, of the people who applied for religious exemption. It will be hard enough for them to work with these six. *So this is an improper argument, Ms. Barsotti*.
>
> **Attorney Barsotti**: Okay.
>
> **The Court**: Sustained.

(*id*. at 94-95) (emphasis added).

Attorney Barsotti again violated the order almost immediately:

> **Attorney Barsotti**: Well, you didn't hear any evidence of anybody else getting exemptions, I don't believe. Maybe Mr. Maplestone talked about that. I don't recall that. In any event, you know, they could have tried harder to accommodate the small percentage. This is 4 percent of the workforce that expressed a religious, you know, problem with the vaccine requirement.

(*id*. at 95). Once again, BART objected. The judge provided a limiting instruction immediately thereafter:

> **Attorney Hanlon**: Objection, Your Honor. That argument continues the same thing you just excluded.
>
> **The Court**: Very true.
>
> **Attorney Barsotti**: Okay. I apologize.
>
> **The Court**: Improper argument. The jury will disregard the statement.
>
> **Attorney Barsotti**: I'll move on.
>
> **The Court**: If we were going to do that, we would have had — we would have had a five-week trial in which we would bring in all those people, and BART's position would be — no, we do six people. Please, Ms. Barsotti.

13

>**Attorney Barsotti**: Okay.
>
>**The Court**: This one I do remember.
>
>**Attorney Barsotti**: Okay.
>
>**The Court**: So you — you are crossing the line.

(*id*. at 95-96).

This order finds that this was a deliberate violation of our exclusionary order *in limine*. The judge made it clear during Attorney Snider's cross-examination that the door was not open. Despite this, Attorney Barsotti crossed the line during her rebuttal argument.

The present question, however, is whether the violation warrants setting aside the verdict. The violation occurred *after* the first phase (concerning undue burden), where it would have had most relevance. The violation occurred in the second phase. There, the issues were the sincerity of four plaintiffs' religious objection (BART had conceded the other two) and damages. That BART had made no accommodations at all to anyone was of lesser relevance to those questions. This information was excluded, moreover, on account of the time it would have taken to address the many cases not on trial, not because it was inflammatory. In the case of the first trial in July, in fact, a ruling had permitted the point to be made, though counsel neglected to do so. Immediately upon Attorney Barsotti's violation, moreover, the judge gave a curative instruction. There is no reason to believe the jury ignored the curative and immediate instruction. This order finds that Attorney Barsotti's intentional violation does not warrant a new trial.

**CONCLUSION**

This trial would have been about as close to perfect as civil trials ever get save for two imperfections, one the fault of plaintiffs and the other the fault of BART. The judge regrets these flaws but they, even in combination, did not result in a miscarriage of justice. The trial was still fair enough to stand. BART's motion judgment as a matter of law under Rule 50 and motion for a new trial under Rule 59 are **DENIED**.

**IT IS SO ORDERED.**

Dated: December 30, 2024.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE